UNITED STATES of America, Plaintiff–Appellee,

v.

Kenneth Joseph MASAT, Defendant–Appellant.

No. 88–2093.

United States Court of Appeals, Fifth Circuit.

Feb. 28, 1990.

Scott McLarty, Athens, Ga., for defendant-appellant.

Jeffrey J. Strand, Asst. U.S. Atty., Tyler, Tex., for plaintiff-appellee.

Before HIGGINBOTHAM, SMITH, and DUHÉ, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Kenneth Masat appeals from his conviction for tax evasion, contending that he is entitled to a new trial due to improper questioning on voir dire, errors in jury instructions, duplicitous indictment, excluded expert testimony, improper discovery, ineffective assistance of counsel, and failure to comply with 26 U.S.C. § 6103(h)(5). Because we find that there was a significant error in the jury instructions, we must reverse and remand for new trial.

I

Masat was charged by indictment with three counts of tax evasion, in violation of 26 U.S.C. § 7201, for the years 1979, 1980, and 1981. The indictment charged Masat with evasion of the substantial tax due and owing, and alleged various acts committed toward that end, including failure to file tax returns, transferring assets to nominees, and filing false W–4 forms.

Before trial Masat requested information concerning IRS investigations of potential jurors pursuant to 26 U.S.C. § 6103(h)(5). He did not get complete information prior to trial, and requested a continuance, which was denied. The judge did ask the panel as a whole whether anyone had been the subject of any controversy with the IRS, had any tax liens filed against them or had been audited, but did not specifically ask whether any were the subject of any other IRS investigation.

During voir dire the prosecutor asked the jury panel several questions relating to whether any of them had filed affidavits of free white status or similar documents, whether they had ever declared themselves to be free, white, United States citizens, sought to return to organic status as a free, white, family unit, or had ever been or known a member of the Aryan Nation or Aryan Brotherhood. The judge sustained an objection to the references to the Aryan organizations, but overruled objections to the other questions and denied a motion for mistrial.

During trial Masat sought to introduce the testimony of several psychologists on the issue of intent. The psychologists would have testified that Masat suffered from paranoia and post traumatic stress disorder. Masat's counsel argued at trial that paranoia caused Masat to perform some of the acts on which the government's case of evasion was based. The judge did not permit the psychologists to testify on the ground that questions of sincerity, credibility, and willfulness were not ordinarily the subject of expert testimony, but rather were within the ability of a lay juror to decide.

Masat's trial counsel argued many seemingly ridiculous theories, attempted to question fact witnesses on legal issues, and generally pursued a course of defense that seemed likely to lose the case. The judge specifically asked Masat whether this course was in accordance with his wishes, and Masat answered that it was. Masat now argues that his trial counsel was ineffective.

Masat was found guilty on all counts. Four days prior to sentencing he was given the opportunity to review the presentence report. He had it for only a few hours before putting it into the mail to his new counsel, who was out of state. His counsel was unable to be present at his sentencing hearing. Masat requested a continuance, which was denied. Masat was sentenced to five years imprisonment, to be followed by ten years supervised release on the condition that he file any required income tax returns within six months of his release. Masat appeals from his conviction and sentencing.

II

Masat raises many points of error, some with more merit than others. His contentions that the indictment was duplicitous, that the government was improperly seeking discovery in a civil case for use against

him in this case, and that he received ineffective assistance of counsel at trial are all without merit.

## A. INDICTMENT

■ Masat argues that the indictment is duplicitous because it combines in a single count the offenses of "evasion of payment" and "evasion of assessment" of taxes. The government argues that the indictment is not duplicitous, for the acts which Masat argues indicate separate crimes of evasion of assessment and evasion of payment are simply actions commonly taken by taxpayers to evade taxes.

Section 7201 of the Internal Revenue Code provides:

Attempt to evade or defeat tax.

Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony....

26 U.S.C. § 7201. The indictment charging Masat first spells out the offense of evasion of tax by tracking the language of the statute: "Masat ... attempt[ed] to evade and defeat the substantial income tax due and owing...." The indictment then describes the various acts by which Masat was alleged to have committed the offense of evasion of tax, such as failing to make a return, failing to pay substantial income tax, assigning income and property to nominees and filing false W–4 forms. These are acts constituting both evasion of payment and evasion of assessment.

No objection was made to the indictment below, however, so any reversible error must be plain.[1] Masat contends the indictment and verdict in this case were plainly duplicitous. The government replies that it charged Masat with evasion of taxes, and it is only coincidence that the acts referred to could be acts constituting evasion of payment as well as evasion of assessment.

No other court of appeals has addressed the issue of whether a single count in an indictment alleging violation of 26 U.S.C.

§ 7201, referring to the attempt to evade or defeat tax or the payment thereof, has alleged two separate crimes, and therefore is duplicitous. Masat's argument, while unique, is not persuasive. The charge in the indictment directly tracked the wording of § 7201. The "two crimes" of which Masat contends he was charged come from one statute, indeed, from one sentence. In truth, there is one crime, the evasion of taxes, and it is of no moment that both assessment and payment might have been evaded. There was no plain error requiring reversal, for the indictment was not duplicitous.

## B. DISCOVERY

■ Masat argues that the government improperly sought to discover information from him through a civil proceeding. Masat implies that the government would have used in the criminal proceeding the information it received in the civil proceeding. The government denies obtaining discovery from Masat in the civil proceeding.

We are directed to no specific information obtained from Masat as a result of the civil proceeding; thus we would have to accept the theory that it was wrong for the government merely to request the information. Masat has not cited any authority for this unlikely argument, and we find no reason to accept it. *See United States v. Ballard,* 779 F.2d 287, 295 (5th Cir.), *cert. denied,* 475 U.S. 1109, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986).

## C. EFFECTIVE ASSISTANCE OF COUNSEL

Masat argues that his trial counsel, Mr. Dickstein, was ineffective in failing to raise the issue of the duplicitous indictment, in cross examining fact witnesses about the law, and in making legal arguments. Masat concedes that the district judge sought and received Masat's assurance that Mr. Dickstein was proceeding according to Masat's wishes. Nevertheless, Masat argues

---

**1.** Fed.R.Crim.P. 52(b) provides:

Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

that although the general right to counsel can be waived, the right to effective counsel probably cannot be waived, and that, in any event, Masat was not competent to make such a waiver. In support of his own incompetence, he states that the psychologists who examined him noted he would not cooperate with counsel who did not pursue his theories of the law, and that he viewed the trial solely as an opportunity to have his view of the law heard.

The government argues generally that the conduct of Masat's counsel did not fall below the standard set by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The government states that there was nothing duplicitous about the indictment, so counsel's conduct in not objecting was reasonable. The government also argues that trial tactics are subject to great deference on review, and that Masat's counsel simply acted according to Masat's wishes.

■ The assistance of counsel was not ineffective for failure to object to the indictment as duplicitous, for it was not duplicitous. Whether counsel's trial tactics were ineffective assistance presents a more difficult problem. The trial judge did mention out of the presence of the jury that Mr. Dickstein seemed to be proceeding in such a way as to secure a conviction. He noted that Dickstein had asserted that United States citizens owe taxes only on income derived from sources outside the United States, that only aliens have to pay taxes on income derived from within the United States, that the IRS embezzled Masat's tax refund, that either the IRS or the Code was a hoax, and that the Fifth Amendment protected Masat from inquiries relating to years outside of the years in question. While these tactics seem adverse to his client's interests, apparently Masat insisted that his counsel conduct this peculiar defense. Masat told the judge "[Dickstein] is pursuing exactly the issue as I would want to do it myself," and "Fortunately, I've been given my day in court in a rather repressive way because I'm a Defendant, but this is similar to the due process I've requested...."

■ In *Strickland* the Supreme Court gave the lower courts a good deal of latitude. A court may determine whether "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. at 2066. Also, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691, 104 S.Ct. at 2066. A lawyer may still be sanctioned for pursuing frivolous theories, even on the insistence of his client, and it would be unusual to foreclose an effective assistance claim based on conduct that operates to the detriment of the client and is otherwise sanctionable. Cutting through the smoke, it is apparent that we are being asked to permit a defendant to avoid conviction on the ground that his lawyer did exactly what he asked him to do. That argument answers itself. As the Eleventh Circuit noted in *Mulligan v. Kemp:*

> At the start, we note that a defendant's Sixth Amendment rights are his alone, and that trial counsel, while held to a standard of "reasonable effectiveness," is still only an *assistant* to the defendant and not the master of the defense.... Because we recognize that a defendant must have this broad power to dictate the manner in which he is tried, it follows that, in evaluating strategic choices of trial counsel, we must give great deference to choices which are made under the explicit direction of the client.

771 F.2d 1436, 1441 (11th Cir.1985), *cert. denied*, 480 U.S. 911, 107 S.Ct. 1358, 94 L.Ed.2d 529 (1987). The Eleventh Circuit held in *Mulligan* that "if [counsel] is commanded by his client to present a certain defense, and if he does thoroughly explain the potential problems with the suggested approach, then his ultimate decision to follow the client's will may not be lightly disturbed." 771 F.2d at 1442. This circuit reached similar results in a case where the client insisted on an alibi defense instead of an insanity defense. *Lowenfield v. Phelps*, 817 F.2d 285, 292 (5th Cir.1987), *cert. granted on other grounds* 483 U.S. 1005,

107 S.Ct. 3227, 97 L.Ed.2d 734 (1987), and *aff'd*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). The court stated:

> Lowenfield's directions were entitled to be followed. The circumstances are extremely rare when counsel is not required to follow his client's instructions on a decision of this nature.

*Id. See also Autry v. McKaskle*, 727 F.2d 358 (5th Cir.), *cert. denied*, 465 U.S. 1090, 104 S.Ct. 1462, 79 L.Ed.2d 909 (1984). In *Autry*, the defendant did not want his lawyer to fight the death penalty, as Autry preferred death to life imprisonment, and he would not allow his counsel to develop mitigating evidence at the sentencing phase. On appeal Autry argued that his trial counsel should have pressed for an inquiry into the mental competence of the defendant before proceeding in accordance with his wishes not to fight the death penalty. This court rejected that contention. *Id.* at 361–62. "If [the defendant] knowingly made the choices, [his attorney] was ethically bound to follow [the defendant's] wishes." *Id.*

Counsel was following Masat's wishes. The trial judge specifically asked Masat whether his counsel was conducting trial as he wished. The tactics of trial counsel were also not entirely out of line, as much of Masat's defense was that he truly believed that he did not owe any taxes. The theories propounded by counsel were those that Masat believed relieved him of any tax liability. It is not strange that Masat would want to argue those theories in court, nor that his counsel would put them before the jury. We cannot say that Mr. Dickstein's conduct at trial fell below the standard of reasonable assistance required by *Strickland*.

## III

Masat raises several issues that are not frivolous, including the exclusion of expert testimony, and failure to grant a continuance in order for Masat to acquire information.

## A. EXPERT TESTIMONY

■ At trial Masat attempted to introduce expert testimony bearing on the issue of intent. On appeal, Masat argues that this psychological testimony would have shown that he suffered from post traumatic stress disorder and paranoia, and that his affirmative acts of hiding assets were not motivated by a desire to evade taxes, but rather were a result of his paranoid desire to protect his privacy. A close look at the psychologists' reports found in the record does not indicate that they would have testified to that effect. The reports indicate only that the psychologists felt Masat's beliefs were strong and sincerely held. Masat argues that the proffered psychological testimony was relevant, and should not have been excluded. The government argues that the testimony would have addressed issues within the abilities of a normal juror, and would also have touched on the ultimate legal issue of willfulness.

First, the government is incorrect in its contention that this evidence is excludable under evidence rule 704(b), which prohibits an expert from testifying as to whether a defendant had the mental state of the crime charged. The district court properly rejected this argument on the basis of this court's interpretation of the rule in *United States v. Dotson*, 817 F.2d 1127 (5th Cir.), *modified on rehearing on other grounds*, 821 F.2d 1034 (5th Cir.1987). In *Dotson*, a government expert testified that, on the basis of certain items of evidence, he believed the defendant "willfully and intentionally increased his income knowing full well that he had not reported the taxes due thereon." This court found no abuse of discretion in permitting the testimony. *Id.* at 1132. *Dotson* seems to read Rule 704(b) to prohibit only a direct statement on the issue of intent. The proposed psychological testimony in the present case was not nearly so direct as the testimony allowed in *Dotson*, and therefore Rule 704(b) would not have mandated excluding the testimony.

■ We cannot say, however, that the district court was wrong in determining that the proffered evidence concerned an

issue that was within the ability of the ordinary juror to decide. The exclusion of the evidence would, therefore, be supported under evidence rules 401 and 702, the rules on which the district court based its decision. It is true that courts have held that psychological testimony should be admitted where the crime involved a specific intent, *see, e.g., United States v. Busic,* 592 F.2d 13, 20 (2d Cir.1978), and the testimony relates to "a complaint, an affliction, or a psychological characteristic susceptible to clinical evaluation." *United States v. Ellsworth,* 738 F.2d 333 (8th Cir.), *cert. denied,* 469 U.S. 1042, 105 S.Ct. 528, 83 L.Ed.2d 415 (1984). A conviction for tax evasion requires a finding of specific intent, and Masat contends that without expert testimony, lay jurors could not perceive the effect of paranoia and Post Traumatic Stress Disorder on his ability to form the requisite intent. *See United States v. Hill,* 655 F.2d 512 (3d Cir.1981).

Nonetheless, the trial judge's ruling is reviewable only for abuse of discretion. *United States v. Newman,* 849 F.2d 156, 165 (5th Cir.1988). The psychological testimony proffered does not appear to address how his mental afflictions affected Masat's actions, nor does it show that they impaired his ability to reason. Although the evidence might have been helpful to the jury in determining Masat's mental state, it primarily dealt with the issue of Masat's sincerity, something within the ability of the ordinary juror to determine. We cannot conclude that the exclusion of this expert testimony was an abuse of discretion.

## B. POTENTIAL JUROR INFORMATION

Masat argues that under 26 U.S.C. § 6103(h)(5) he was entitled to know whether each potential juror had ever been the subject of an audit or other tax investigation by the IRS. The statute requires the

Secretary of the Treasury to inform certain parties whether there have been tax investigations of any potential jurors.[2] Masat contends that he performed every act required of him under the statute, but that he was unable to obtain complete information before voir dire. His motion for continuance to allow him to get the information was denied. He argues that he has an "absolute right" to this information, citing *United States v. Hashimoto,* 878 F.2d 1126 (9th Cir.1989).

The Ninth Circuit in *Hashimoto* did in fact describe a defendant's right to obtain information under the statute as an "absolute right." *Id.* at 1130. The defendant in that case was not given an opportunity to receive the juror information, and his conviction was reversed. The Ninth Circuit was unsure which standard of review should apply, that is, whether the right was unqualified and required reversal in every case in which the information was improperly denied, or whether customary standards of voir dire review should govern. The court avoided the question by concluding that the lower standard would require reversal in any event, as Hashimoto had requested juror information from the court in enough time to have gotten the information from the Secretary, but his motion was denied. *Id.* at 1133.

■ Like the Ninth Circuit, "[w]e begin by noting that the statutory right conferred by this provision is broadly phrased. Section 6103(h)(5) states that the Secretary '*shall*' respond to a written inquiry from a party to a judicial proceeding pertaining to tax administration." *Hashimoto,* 878 F.2d at 1129. The Secretary has no discretion to refuse to provide the information, so long as the proper procedures to obtain the information have been followed. *Id.*

■ The statute itself does not describe the procedures to be followed, other than

---

2. 26 U.S.C. § 6103(h)(5) provides:

Prospective jurors.—In connection with any judicial proceeding described in paragraph (4) to which the United States is a party, the Secretary shall respond to a written inquiry from an attorney of the Department of Justice (including a United States attorney) involved in such a proceeding or any person (or his legal representative) who is a party to such proceeding as to whether an individual who is a prospective juror in such proceeding has or has not been the subject of any audit or other tax investigation by the Internal Revenue Service. The Secretary shall limit such response to an affirmative or negative reply to such inquiry.

to state that the request must be in writing. These procedures also have not been addressed in the Code of Federal Regulations. The Ninth Circuit has held that, given the time it will likely take the Secretary to return the information, the defendant has the right to receive the prospective juror list as soon as the individuals have been selected, so that he may request the information from the Secretary in a timely manner. Masat requested the juror lists from the court in a timely manner, received the names of potential jurors in time to write to the Secretary, but did not receive complete information on all of the potential jurors in time for trial. Masat requested a continuance to get the additional information, but this was denied.

■ The government argues that it was error, but not reversible error, to allow the continuance that might have allowed Masat to acquire the complete information from the Secretary. The government contends that it was harmless error because the prospective jurors were asked on voir dire whether or not they had been the subject of an audit or controversy with the IRS. While this arguably corrected any error, it can also be argued that Congress felt the right to the information was important enough to create an unqualified right to it in tax cases, and therefore the failure to allow a defendant complete information would be reversible error in all such cases. *See Hashimoto,* 878 F.2d at 1133. Masat argues that the failure to provide the information should be per se reversible error, for jurors may have faulty memories, or may be loath to admit that they have been the subject of an audit, and therefore may not be relied upon to answer correctly on voir dire.

Prospective jurors might be reluctant to answer these questions truthfully, but veniremen are often asked sensitive and potentially embarrassing questions, including inquiries into their involvement in criminal activity or the involvement of family or friends in criminal activity, their religious or philosophical beliefs, and other matters of a personal nature. But we do not for that reason assume that veniremen will lie in response to those types of questions.

Regardless, several potential jurors in this case responded affirmatively that they had been audited, involved with the IRS in some other type of controversy, or had a tax lien filed against them.

Although the district court should have allowed Masat time to discover the juror information from the Secretary, any error was not prejudicial, for the jurors were asked the relevant questions by the trial judge. The question regarding any controversy with the IRS was broad enough to include "an investigation," and the jurors were specifically asked whether any had been audited. For these reasons, any error in failing to grant Masat a continuance in order to obtain further information under 26 U.S.C. § 6103(h)(5) was harmless.

IV

■ Masat argues that during voir dire the government asked questions of the panel that were designed to portray Masat as a racist. The references to free white status, Anglo–Saxon heritage, and Aryan organizations had no bearing on the case, and we can only conclude were calculated to bias the jurors. Therefore, Masat argues, he was not tried by an impartial jury as is required by the Sixth Amendment. The government argues that Masat publicly espoused the ideas contained in the voir dire questions, and the government was entitled to determine whether any member of the jury panel had a similar prejudice.

It is arguable that because the documents used as a basis for the questioning were later put into evidence at trial, the voir dire created no undue risk of prejudice warranting reversal. The argument continues that the government was entitled to discover whether any member of the jury panel had an affinity for Masat's beliefs. Yet, in allegedly seeking this information, the government repeatedly asked similar questions, which the prosecutor noted that he was embarrassed to ask. The prosecutor closely tracked documents Masat had allegedly filed with the IRS instead of simply making general inquiries of the jurors' beliefs. The questions were so specific that it would be unlikely that any juror

would answer in the affirmative. The prosecutor asked nine questions related to race or sovereignty, culminating in a question about whether any members of the jury were members of the Aryan Brotherhood.[3] After a discussion with the judge, the objection to this question was sustained, but with no indication to the jury that the Aryan Brotherhood had no relation to the case. Given the prosecutor's earlier statement that the questions he would ask directly related to evidence in the case, the clear implication was that Masat was a member of that organization. There was actually no evidence showing that Masat had any ties with the Aryan Brotherhood. This sort of fact-specific questioning might weed out racists, but would not be a very effective or efficient way of doing so, and it also served to portray Masat as a racist. A single question of this sort might have done no harm, but the series of similar questions posed in this case might easily have biased the jurors. This voir dire questioning must be condemned.

The Supreme Court has said of prosecutorial conduct that "while [the prosecutor] may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). The prosecutor's conduct in his voir dire questioning went beyond hard blows, into the realm of foul blows.

Nevertheless, a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial.

*United States v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985).

The voir dire questions appear to be quite prejudicial, painting Masat as a racist. On the other hand, the prejudicial effect was softened by the admission into evidence of documents from which the prosecutor paraphrased his questions. The views Masat held relating to his status as a free, white, male sovereign were put before the jury, and in fact were an integral part of his defense that he believed he did not have to pay taxes. Simply because the jury was obliquely informed of these views at an earlier time in the proceedings does not mean that the verdict was affected.

In addition, the district court gave several cautionary instructions which should have mitigated the prejudicial effect of any

3. Specifically, after stating that he was embarrassed by the nature of the questions, the prosecutor asked:

1. "[H]as anybody ... ever considered themselves a sovereign? By that I mean someone who considers themselves separate and apart from the Federal and State and local laws. Somebody who can basically make up their own rules?

2. Is there anybody who has considered themselves such a type of person, somebody who can just basically do what they want and the law doesn't apply to them?

3. Has anybody ever considered it necessary ... to file something called an Affidavit in Support of Free White Status, claiming that they are a free, natural, white human being and not an artificial or juristic person?

4. Is there anyone who felt the need to file such an affidavit of free white status stating that they are in accordance with the law of clans?

5. Has anybody felt the need to file a document with the IRS or anyone else called an Affidavit of Heritage stating that they are a free, white male, natural individual and tracing their ancestry back to their grandparents stating that each and every one of their relatives back that far is an Anglo–Saxon person? And additionally stating that they have no other heritage than Anglo–Saxon and that there is neither Negro or Asiatic blood in their family?

6. Has anyone ever filed any sort of a document as a free, white male, sovereign American, free man or free woman?

7. Has anyone ever filed an affidavit declaration in filing of a natural United States citizen claiming to be a free, white, United States citizen de jure and certifying the existence of their person as a free, white, United States citizen?

8. Has anyone ever filed a notice to the Administrative Branch of the State Government and a like notice to the Administrative Branch to the Federal Government regarding notices, revocations, rescissions and cancellations in accordance with intent of themselves and their family establishment through the attached documents to return to organic status as a free, white family unit?

9. Has anyone here ever been or know someone who is a member of the Aryan Nation or the Aryan Brotherhood?

impropriety in the conduct of voir dire. The district court sustained an objection to the question regarding the Aryan Brotherhood. By the judge's earlier instruction, the jurors were, therefore, to disregard it. More important, the jurors were told that voir dire and any other statements by the attorneys were not evidence, and that only what was admitted into evidence should be considered in rendering a verdict.

Finally, the evidence supporting Masat's guilt was strong. There was evidence that he failed to file tax returns, filed false W–4 forms, and transferred assets to nominees. He admitted he did not feel he had to pay taxes. We find that the issue is close but need not be resolved because the case must be tried again for a different reason. We traveled this far, nonetheless, because we want to insure that this does not occur again. This description of the voir dire and its condemnation should do so.

### V

■■■ Error in the court's instructions to the jury does require reversal and a remand for new trial. The jury instructions did not clearly explain that affirmative acts of evasion are required. The jury's notes to the court asked for clarification on this precise point. Unfortunately, at the same time, the prosecution led the district court away from this critical inquiry with a request for a charge regarding lesser included offenses, forcing the court into a long evening's research. The following morning the prosecution abandoned the request as capriciously as they requested it. The result of this confusing and distracting shift was error—under the instruction given, the jury could have found Masat guilty solely on the basis of an omission, failure to file, rather than an affirmative act.

There are three elements to the crime of tax evasion: the existence of a substantial tax deficiency, willfulness, and an affirmative act made with the intent to evade taxes. *Sansone v. United States*, 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965). A person may not be convicted of tax evasion on the basis of willful omissions alone; the person must also undertake an affirmative act of evasion. *Spies v. United States*, 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943). In its charge, the trial court instructed that there were two elements of tax evasion: a tax deficiency and a willful attempt to evade. The court did not explain that an affirmative act must be a commission, rather than an omission. The court mentioned failure to file as one aspect of the willful attempt requirement. Later, in clarifying its instructions, the court listed five acts which are evidence of attempt to evade, one of which was failure to file, an omission.[4]

4. The court's instruction was, in pertinent part: This is a tax evasion case as opposed to a failure to file case.... The gist of the offense ... is willful attempt on the part of the Defendant to evade and defeat the tax imposed by the income tax laws. In order to establish the offense, the Government must prove the following to your satisfaction beyond a reasonable doubt: Two elements, first, that substantial additional income tax was due and owing from the Defendant for the year in question. Second, that the Defendant knowingly and willfully attempted to evade or defeat such tax.... The word "attempt" contemplates that the Defendant had knowledge and understanding that during the particular tax year involved he had income which was taxable which he was required by law to report; but he, nevertheless, attempted to evade or defeat the tax or a substantial portion of the tax on that income by willfully failing to report all of the income which he knew he had during the year. The Government has alleged that the

Defendant attempted to evade the taxes due and owing by a number of means in this case. However, only one affirmative act alleged as constituting an offense to evade must be proved.
[B]y way of illustration only, willfulness may be inferred from conduct such as concealment of assets, covering up sources of income, prior tax paying history, extensive use of currency or cashier's checks or otherwise handling one's affairs in order to avoid making records that are usual and customary in transactions of the kind and placing property or money in the name of another, the filing of false W–4 forms, any conduct that a likely effect of which would be to mislead or conceal the Defendant's gross income. I give you these instances simply to illustrate the conduct that you may consider in determining the issue of intent to evade or defeat taxes. I do not, by this instruction, mean to imply that the Defendant did, in fact, engage in any of such conduct. You have the exclusive obli-

The willful failure to file is merely a misdemeanor, and without any other affirmative act it is insufficient for conviction of attempted tax evasion.

After it retired to deliberate, the jury presented several questions to the court. First it asked the court to explain "the difference between tax evasion and refusing to pay taxes." The court answered, in part:

The word, "attempt" contemplates that the Defendant had knowledge and an understanding that during the particular tax year involved he had income which was taxable and *which he was required by law to report,* but that he nevertheless attempted to evade or defeat the tax or a substantial portion of the tax on that income *by willfully failing to report all of the income which he knew he had during the year.* The Government has alleged that the Defendant attempted to evade the taxes due and owing by a number of means. However, only one of the affirmative acts alleged as constituting an attempt to evade must be proved. (Emphasis added).

The jury's second question was, "If Mr. Masat is guilty of failure to [file] 1040 forms for the years 1979, 1980 and 1981 is he considered to be guilty of income tax evasion for these years?" The court responded as follows:

Concerning your specific question, which was that if Mr. Masat is guilty of failing to file for the years in question, is he considered to be guilty of income tax evasion for the years '79, '80 and '81.

gation to make that decision. It is for you to make that determination whether he did or not.

You have heard evidence in this case concerning whether or not the Defendant filed tax returns for the years following '79, '80 and '81. I'm talking about '82 forward now. If you believe from the evidence that such returns were, in fact, not filed, such failure to file in those years is not included in this indictment and would, at most, constitute evidence of similar acts in relation to those involved in the Indictment. Evidence that an act was done at one time or on one occasion is not any evidence or proof whatsoever that a similar act was done at another time or on another occasion.

Now, I want to remind you that the charge in this case is not that he successfully evaded his taxes. The charge in this case was that he attempted to evade his taxes.

... first of all, specifically, one part of your question, is a failure to file in and of itself is not enough for a conviction. The specific answer to that part of the question is no, but the charge is attempted evasion, not whether he was successful in evading his taxes.

There are five facts that the Government has focused on and that the Defense has focused on in their part of the case that I direct your attention to. First, the Government contends that these items are evidence relevant to whether there was, in fact, an attempt to evade in this case. *First is failure to file returns for the years;* second, using nominee names; third, using the church for personal benefit; fourth, using cash or currency and cashier's checks; and five, filing false W–4 forms.

Masat objected to the instruction and asked for a "*Spies* instruction," but none was given. Masat argues that a rational juror would have understood the instruction to mean that a failure to file would support the evasion charge if the omission was with the intent to evade. A juror might have inferred that what the court meant was that, in addition to failure to file, the government must have proved a substantial tax deficiency and willfulness, instead of having to prove an affirmative commission. We agree.

Therefore, to sum it up, any evidence which may be in this record concerning a failure to file income tax returns past 1981 is limited to the narrow question of intent or state of mind concerning counts charged 1979 through '81.

The provisions of the Internal Revenue Code require that each person obligated to pay an income tax must file and prepare a tax return. I told you also, though, this is not a failure to file case.

The law does permit the Secretary to prepare a return for an individual who has not filed, the law does not require the Secretary to do so. The Secretary's discretion in this matter in no way reduces the obligation of an individual taxpayer to file a return.

The judge did follow the two-element instruction approved by this Court in *United States v. Hughes*, 766 F.2d 875, 879–80 (5th Cir.1985), that is, instructing that substantial tax was due and that the defendant knowingly and willfully attempted to evade the tax, but this is not all that Masat objected to. Although the two-part instruction was approved in *Hughes*, the challenge there was to the instructions on willfulness, which were included in the instruction, albeit not as a separate element of the offense. Here the challenge is to the instructions on affirmative acts, not so much because it was not included as a separate element, but because it was indicated that a willful failure to file might be enough to find Masat guilty.

It is clear from their question that the jurors were confused by the instructions, and wondered whether failure to pay or failure to file were sufficient to require conviction for tax evasion. The district court never squarely told the jury that an affirmative act other than failure to file was necessary for conviction. The court did respond to the jury's questions, but in doing so first repeated that Masat could be found guilty for failing to report his income as required by law. A second response did not clarify this issue, for although the judge did say failure to file was not enough by itself, he went on to say that the charge was attempted evasion, not successful evasion. The judge did not specify what was required in addition to failure to file, and left the impression that failure to file plus willfulness would be sufficient. This would allow conviction contrary to law, and hence we must reverse and remand for new trial.

### VI

Masat also argues that he was not permitted a reasonable time to review the presentence report prior to sentencing as required under Fed.R.Crim.P. 32(c)(3)(A), and that he should have been granted a continuance to allow counsel to be present at his sentencing hearing. Masat received the report on a Monday, and the sentencing was scheduled for the following Friday. He claims that he only had the report for a few hours before mailing it to his new out of state counsel, who could not get to Tyler for the Friday sentencing hearing. Masat requested a continuance so that he and counsel could review the presentence report and so that he might have counsel present at his sentencing, but the continuance was denied.

We question whether the denial of continuance so that Masat's counsel might be present at his sentencing was a denial of his Sixth Amendment right to the assistance of counsel, but we need not reach this issue. The error in jury instructions requires a new trial and any error is unlikely to occur again.

REVERSED and REMANDED for a new trial.