UNITED STATES of America, Plaintiff–Appellee,

v.

James Dabbs MEEK, Jr. Defendant–Appellant.

No. 92–7114.

United States Court of Appeals, Tenth Circuit.

June 29, 1993.

Craig Bryant, Asst. Federal Public Defender, Tulsa, OK, submitted on the briefs for defendant-appellant.

James A. Bruton, Acting Asst. Atty. Gen., and Robert E. Lindsay, Alan Hechtkopf, and Gregory V. Davis, Tax Div., Dept. of Justice, Washington, DC, and John W. Raley, Jr., U.S. Atty., Muskogee, OK, submitted on brief for plaintiff-appellee.

Before McKAY, LOGAN, and EBEL, Circuit Judges.

EBEL, Circuit Judge.

The defendant-appellant, James Dabbs Meek, Jr., was convicted of willfully failing to file an income tax return, in violation of 26 U.S.C. § 7203,[1] and willfully attempting to evade taxes, in violation of 26 U.S.C. § 7201,[2] for the 1987 and 1988 tax years. On appeal, Meek argues that the district court erroneously instructed the jury on the elements of the offense of evasion and impermissibly considered his non-charged conduct in calculating his prison sentence for this offense. We affirm.

## FACTS

The defendant possesses a 25% interest in the J.W. Meek Residual Trust (the "Trust"), which in turn owns a 50.1% interest in the Fort Smith Coca-Cola Bottling Company (the "Bottling Company"). The Trust receives income from the Bottling Company which it distributes to the defendant in accordance with his interest in the Trust. The income the defendant receives from the Trust constitutes his primary source of income.

1. Section 7203 provides in relevant part:
Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return, keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $25,000 ($100,000 in the case of a corporation), or imprisoned not more than 1 year, or both, together with the costs of prosecution.

26 U.S.C. § 7203 (1984).

2. Section 7201 provides:
Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution.
26 U.S.C. § 7201 (1982).

In 1986, the defendant consulted an accountant about establishing a particular type of trust to reduce his taxable income. The accountant informed the defendant that the trust was not feasible and would be disregarded for tax purposes. Soon thereafter, the defendant joined the Freeman Education Association ("FEA"), an organization designed to provide its members with an alternative to the Federal Reserve System. The FEA acts essentially as a warehouse bank, retaining funds deposited by its members until directed to disburse these funds. At the time the defendant became a member of the FEA, all transactions were conducted by means of a numbering system to protect the privacy of FEA members. At trial, a former trustee of the FEA testified that the majority of FEA members were individuals who believed that the income tax laws were either unconstitutional or voluntary and wanted to avoid leaving a paper trail for the IRS.

In 1987, the defendant was convicted of willfully failing to file tax returns for 1981, 1982, and 1983. Prior to being sentenced for this conviction, he wrote a letter to his probation officers stating that "I have begun to get my information together and will file my past individual tax return [sic] and pay the taxes that I owe. I will never again be duped into disobeying the tax laws now that I know I have disobeyed." Tr. Vol. III at 223. The defendant was eventually sentenced to three years imprisonment.

While the defendant was in prison, he continued to earn income from the Trust. A government agent testified that the Trust paid the defendant $126,266.00 in 1987 and $92,565.10 in 1988. Notwithstanding his prior tax conviction, the defendant failed to file tax returns for either of these years. As a result, a four-count indictment was filed against the defendant for the years 1987 and 1988 charging him with two counts of willfully failing to file a tax return and two counts of willfully attempting to evade income taxes. The defendant pleaded not guilty and elected to be tried by a jury. At the close of the evidence, the jury was provided with the following instruction concerning the charges of evasion:

In order to establish the offense of attempting to evade or defeat income tax or payment of income tax, as charged in Counts 3 and 4, each of the following essential elements must be proved beyond a reasonable doubt:

1. That a substantial amount of federal income tax was due and owing from the defendant for the calendar year as charged in the indictment; and

2. That the defendant knowingly and willfully attempted to evade or defeat the tax.

With respect to these counts of the indictment, "to evade or defeat" a tax means to escape paying a tax by means other than lawful avoidance. It requires an intent by a defendant to evade or defeat the tax combined with some act willfully done by that defendant in furtherance of that intent.

Tr. Vol. II at 7–8. The defendant did not object to this instruction.

The jury returned a verdict of guilty on all four counts, and the defendant was sentenced to concurrent prison terms of 24 months on the evasion counts and 12 months on the failure to file counts.[3] In determining the defendant's base level offense for the evasion counts, the district court followed the recommendation in the presentence report that the tax loss attributable to the defendant include not only the amount of tax which the defendant attempted to evade in 1987 and 1988, for which the defendant was convicted, but also the defendant's tax liability for the years 1984, 1985, 1986, 1989, 1990, and 1991.[4] The inclusion of the defendant's tax liability for these latter years increased the total tax loss attributable to the defendant from $48,377.85 to $190,375.85, thereby increasing the defendant's base level offense from 11 to 13. *See*

3. The defendant was also sentenced to 36 months of supervised release on the evasion counts and 12 months of supervised release on the failure to file counts, with the sentences to be served concurrently, and was ordered to pay $83,013.24 in fines, costs, and restitution.

4. IRS records introduced at trial indicated, and the defendant admitted, that he had failed to file any tax returns since 1976.

United States Sentencing Commission, *Guidelines Manual,* § 2T4.1 (Nov. 1991). The defendant objected to the presentence report's recommendation, arguing that the tax loss should include only that amount attributable to conduct for which he had been charged and convicted.

## DISCUSSION

### I. *The Jury Instructions*

The defendant first argues that the district court improperly instructed the jury on the offense of willful tax evasion. Since the defendant failed to raise this claim in the trial court, we may review this claim on appeal only if it amounts to plain error. Fed. R.Crim.P. 52(b); *United States v. Lacey,* 969 F.2d 926, 928 (10th Cir.1992), *vacated on other grounds,* — U.S. —, 113 S.Ct. 1233, 122 L.Ed.2d 640 (1993). To constitute plain error, the district court's error must have been both "obvious and substantial." *United States v. Mitcheltree,* 940 F.2d 1329, 1334 (10th Cir.1991); *United States v. Jefferson,* 925 F.2d 1242, 1254 (10th Cir.1991).

 The felony offense of willfully attempting to evade taxes is the "capstone of a system of sanctions which singly or in combination were calculated to induce prompt and forthright fulfillment of every duty under the income tax law." *Spies v. United States,* 317 U.S. 492, 497, 63 S.Ct. 364, 367, 87 L.Ed. 418 (1943). To obtain a conviction for evasion, the government must prove three elements: 1) the existence of a substantial tax liability, 2) willfulness, and 3) an affirmative act constituting an evasion or attempted evasion of the tax. *Sansone v. United States,* 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965); *United States v. Payne,* 978 F.2d 1177, 1178 (10th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 2441, 124 L.Ed.2d 659 (1993); *United States v. Swallow,* 511 F.2d 514, 519 (10th Cir.), *cert. denied,* 423 U.S.

845, 96 S.Ct. 82, 46 L.Ed.2d 66 (1975). An affirmative act requires more than the passive failure to file a tax return; rather, it requires a positive act of commission designed to mislead or conceal. *Spies,* 317 U.S. at 499, 63 S.Ct. at 368; *Payne,* 978 F.2d at 1178. It is the requirement of an affirmative act that distinguishes the offense of evasion from the misdemeanor offense of willful failure to file a tax return. *Sansone,* 380 U.S. at 351, 85 S.Ct. at 1010.

The defendant argues that the district court failed to instruct the jury that his conviction for evasion required proof of an affirmative act. Accordingly, the defendant argues that the jury may have erroneously believed that his failure to file a tax return, as charged in the first two counts of the indictment, was also sufficient to support a conviction for evasion. We conclude that the district court's instruction constituted neither obvious nor substantial error.

 The district court instructed the jury that the government was required to prove that the defendant "attempted to evade or defeat" his tax liability and that to establish the existence of an attempt the government had to show "some act willfully done by [the] defendant." Although this instruction could have been more specific, we believe these statements, when viewed in context, sufficiently apprised the jury of the need to find an affirmative act in order to convict for evasion.[5]

In *United States v. Fournier,* 861 F.2d 148 (7th Cir.1988), the Seventh Circuit upheld a jury instruction virtually identical to the one provided by the district court in the instant case. The district court in *Fournier* instructed the jury that the government needed to prove that the defendant "attempt[ed] to evade or defeat a tax," which required a showing that the defendant "willfully did some act" in furtherance of an intent to evade his taxes. 861 F.2d at 151. The Sev-

---

**5.** A clearer instruction, adopting the three part test of *Sansone,* would have been the following:

To sustain the charge of attempting to evade or defeat the tax, the government must prove the following three elements:

First, that a substantial amount of tax was due and owing to the federal government;

Second, that the defendant intended to evade or defeat the assessment or payment of this tax; and

Third, that the defendant willfully committed an affirmative act in furtherance of this intent. An affirmative act consists of an act of commission beyond the mere failure to file a tax return.

enth Circuit approved this instruction, concluding that "the phrase 'willfully did some act' is a fair and adequate synonym for the term 'affirmative act.'" *Id.; see also United States v. Mal,* 942 F.2d 682, 686 (9th Cir. 1991) (holding that instruction requiring jury to find that defendant made "affirmative attempt" to evade taxes, defined as "some act willfully done," did not amount to plain error).

The defendant relies on *United States v. Masat,* 896 F.2d 88 (5th Cir.1990), and *United States v. McGill,* 964 F.2d 222 (3rd Cir.), *cert. denied,* —— U.S. ——; 113 S.Ct. 664, 121 L.Ed.2d 588 (1992), for the proposition that a jury must be instructed more explicitly as to the requirement of an affirmative act. We believe the defendant's reliance on these cases is misplaced. In *Masat,* the court concluded that the trial judge committed reversible error by failing explicitly to inform the jury of the need to find an affirmative act after the jury specifically inquired whether the failure to file a return could amount to willful tax evasion. 896 F.2d at 99. In *McGill,* the court likewise decided that the district court's initial set of instructions was erroneous in light of the jury's subsequent questions about whether an act of omission could constitute tax evasion, but concluded that a new trial was not necessary because the district court subsequently remedied any jury confusion by explicitly informing the jury that it was required to find that the defendant committed an affirmative act. 964 F.2d at 236. We read *Masat* and *McGill* as standing, at most, for the proposition that a more explicit instruction regarding the requirement of an affirmative act is necessary when the district court is placed on notice that its instruction has given rise to jury confusion. In the instant case, there was no indication that the jury was confused by the district court's instructions such that the court should have been on notice that a more explicit instruction was necessary. Accordingly, we do not believe that *Masat* and *McGill* are inconsistent with our conclusion that the district court's instruction did not constitute obvious error.

In addition to our conclusion that the district court's instruction was not obvious error, we find that this instruction did not amount to substantial error. An error is substantial if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Mitcheltree,* 940 F.2d at 1333 (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)). Here, the jury was informed by the government in both its opening and closing arguments that a conviction for willful tax evasion required proof that the defendant "affirmatively evaded his taxes." Tr. Vol. III at 11, 246. Furthermore, the government explicitly told the jury during closing argument that willful tax evasion required "something more than not just filing an [sic] tax return." Tr. Vol. III at 246. In light of these statements, we do not believe the district court's instruction can be said to have seriously affected the fairness of the defendant's trial. These statements made clear, even if the district court's instruction did not, that willful tax evasion required proof of more than the defendant's mere failure to file a tax return. *See Mal,* 942 F.2d at 686 (concluding that district court's failure explicitly to instruct jury as to affirmative act requirement was not plain error and distinguishing other cases, in part, because jury was adequately informed during opening and closing argument that the willful failure to file a tax return was not sufficient to constitute tax evasion).

In sum, we conclude that the district court's instruction regarding the elements of willful tax evasion did not amount to plain error. Given the absence of plain error, it is inappropriate for us to reach the merits of the defendant's claim.[6]

## II. *The Defendant's Sentence*

The defendant next argues that the district court improperly applied the sentencing guidelines in calculating his base offense level for his evasion convictions. Since the defendant's challenge to his sentence presents a question of law, we must review the defendant's claim de novo. *See United*

---

**6.** We therefore express no opinion on whether the district court's instruction would have been erroneous under a more searching inquiry than plain error.

*States v. Tisdale,* 921 F.2d 1095, 1100 (10th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 596, 116 L.Ed.2d 619 (1991). In construing the sentencing guidelines, we are bound not only by the guidelines themselves but also by the commentary to the extent that it is not plainly erroneous or inconsistent with the guidelines. *Stinson v. United States,* —— U.S. ——, ——, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993).

Guideline 2T1.1 states that the base offense level for willfully attempting to evade taxes is to be determined by looking to the "tax loss" attributable to the defendant. U.S.S.G. § 2T1.1(a). In determining the tax loss, a court is required to engage in a two-step analysis. First, the court must decide which tax deficiencies to aggregate together. Second, it must decide how to calculate the amount of the aggregated deficiencies. The aggregation determination is addressed by § 3D1.2, which requires aggregation of all counts of conviction "involving substantially the same harm", and § 1B1.3, which requires aggregation of all "relevant conduct", when determining a defendant's base level offense. The formula for calculating the amount of the aggregated deficiencies is provided by §§ 2T1.1(a) and 2T1.3(a), which define the tax loss for any given year as the greater of "the total amount of tax that the defendant evaded or attempted to evade", U.S.S.G. § 2T1.1(a), or "28 percent of the amount by which the greater of gross income and taxable income was understated, plus 100 percent of the total amount of any false credits claimed against the tax," U.S.S.G. § 2T1.3(a). Once the total tax loss attributable to a defendant has been calculated, the defendant's base offense level is determined from the table contained in § 2T4.1.

In the instant case, the defendant challenges the district court's method of aggregation. The district court calculated the tax loss attributable to the defendant as the sum of the actual tax that the defendant attempted to evade in 1987 and 1988 plus 28 percent of the gross income that the defendant failed

to report in 1984, 1985, 1986, 1989, 1990, and 1991. The defendant argues that the district court erroneously included the tax deficiency for the the years 1984–86 and 1989–91 in its calculation of the tax loss because none of the conduct giving rise to these deficiencies was charged in the indictment. According to the defendant, the only deficiencies the district court should have considered were those attributable to his evasion of taxes in 1987 and 1988, which correspond to a base offense level of 11 rather than 13. *See* U.S.S.G. § 2T4.1(F), (H). We find the defendant's argument to be without merit.

Since the defendant is challenging the district court's aggregation of his non-charged conduct, the relevant guideline provision is § 1B1.3 which directs sentencing courts to consider all relevant conduct when calculating a defendant's base offense level. For offenses like tax evasion, for which § 3D1.2(d) would require grouping of multiple convictions,[7] § 1B1.3(a)(2) defines relevant conduct to include "all ... acts or omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). The commentary makes clear that the defendant need not have been charged or convicted of these related acts or omissions in order for them to qualify as relevant conduct:

[Subsection (a)(2) ] applies to offenses for which grouping of counts would be required under § 3D1.2(d) had the defendant been convicted of multiple counts. *Application of this provision does not require the defendant, in fact, to have been convicted of multiple counts.* For example, where the defendant engaged in three drug sales of 10, 15, and 20 grams of cocaine, as part of the same course of conduct or common scheme or plan, subsection (a)(2) provides that the total quantity of cocaine involved (45 grams) is to be used to determine the offense level *even if*

7. As noted previously, guideline 3D1.2 requires grouping of multiple counts of conviction "involving substantially the same harm." U.S.S.G. § 3D1.2. Subsection (d) provides that offenses involve the same harm "when the offense level is

determined largely on the basis of the total amount of harm or loss...." U.S.S.G. § 3D1.2(d). Guideline 2T1.1 is one of the guidelines explicitly included within subsection (d).

*the defendant is convicted of a single count charging only one of the sales.*

U.S.S.G. § 1B1.3, comment. (n. 2) (emphasis added); *see also* U.S.S.G. § 1B1.3, comment. (backg'd) ("Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range.").

In accordance with the commentary, this court has consistently held that § 1B1.3(a)(2) permits the sentencing court to consider conduct beyond the offense of conviction that was part of the same course of conduct as this offense. In *United States v. Ross*, 920 F.2d 1530 (10th Cir.1990), for example, we rejected the defendant's contention that the district court improperly based his offense level on evidence that he possessed with the intent to distribute 2,160 grams of cocaine when he had been charged and convicted of possessing only 379.03 grams of cocaine. We concluded that § 1B1.3(a)(2) required aggregation of the additional quantities possessed by the defendant even though the defendant had not been "convicted" or "indicted" for trafficking these additional quantities. *Id.* at 1538; *see also United States v. Lyons*, 992 F.2d 1029, 1032 (10th Cir.1993); *United States v. Laster*, 958 F.2d 315, 317–18 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 147, 121 L.Ed.2d 98 (1992); *United States v. Ruth*, 946 F.2d 110, 112–13 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1189, 117 L.Ed.2d 431 (1992); *United States v. Koonce*, 945 F.2d 1145, 1150 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1695, 118 L.Ed.2d 406, —— U.S. ——, 112 S.Ct. 1705, 118 L.Ed.2d 413 (1992); *United States v. McCann*, 940 F.2d 1352, 1357–58 (10th Cir.1991); *United States v. Boyd*, 901 F.2d 842, 844 (10th Cir.1990); *United States v. Rutter*, 897 F.2d 1558, 1561–62 (10th Cir.), *cert. denied,* 498 U.S. 829, 111 S.Ct. 88, 112 L.Ed.2d 60 (1990).

In light of § 1B1.3(a)(2), it is clear that the district court had authority to consider the defendant's failure to file tax returns for the years 1984–86 and 1989–91, even though not charged in the indictment, as long as .the failure to file was part of the same course of conduct for which the defendant was convict-

ed. We have no trouble concluding that it was.

The commentary to § 2T1.1 states that "all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated." U.S.S.G. § 2T1.1, comment. (n. 3). The commentary goes on to say that "a continuing pattern of violations of the tax laws by the defendant" is an example of conduct that is to be considered related conduct. *Id.* This commentary indicates that the government may prove that the defendant's non-charged conduct was part of the same course of conduct as the offense of conviction either directly, by establishing that this conduct was part of a continuing pattern of tax violations, or indirectly, by establishing simply that all the conduct to be aggregated constituted violations of the tax code. In the latter situation, the government is entitled only to a rebuttable presumption that the defendant's non-charged conduct was part of the same course of conduct as the offense of conviction, and the defendant may defeat this presumption by coming forward with evidence that his non-charged conduct was clearly unrelated to his conviction.

Here, the government relied on the direct method of proof to establish that the defendant's non-charged conduct was part of the same course of conduct as his offense of conviction. It provided evidence that the defendant's failure to file tax returns for the years 1984–86 and 1989–91 was part of a continuing pattern of tax violations which dated back to 1976 and encompassed his attempted evasion of taxes in 1987 and 1988. Accordingly, we conclude on the basis of § 1B1.3(a)(2) and the commentary to § 2T1.1 that the defendant's failure to file tax returns in years other than 1987 and 1988 was relevant conduct which the district court properly considered in calculating the tax loss attributable to the defendant for purposes of determining his base offense level under § 2T1.1.

To support his contention that the district court improperly considered his non-charged conduct in calculating the tax loss attributable to him under § 2T1.1, the defendant

relies on the Sixth Circuit's decision in *United States v. Daniel*, 956 F.2d 540 (6th Cir. 1992). In *Daniel*, the defendant had been indicted and convicted on three counts of tax evasion. In determining his base offense level under § 2T1.1, the district court considered the defendant's prior violations of the tax laws, which included his failure to file tax returns. The Sixth Circuit held that the district court's consideration of the defendant's prior violations was improper, stating that § 2T1.1 only permits consideration of "relevant criminal conduct underlying the charged offense." *Id.* at 544.

We do not read *Daniel* as standing for the proposition that § 2T1.1 precludes the consideration of non-charged conduct in calculating the tax loss attributable to a defendant. The court's decision in *Daniel* did not turn on the fact that the defendant's sentence was based on non-charged conduct, but rather on the fact that the government had failed to demonstrate that any of the non-charged conduct amounted to a criminal, rather than merely civil, violation of the tax code. *See id.* Had the court believed that § 2T1.1 precluded consideration of all non-charged conduct, it would have been unnecessary for the court to decide whether the government had proved that the defendant's prior violations of the tax laws were criminal in nature. Thus, we believe *Daniel* is best interpreted as standing only for the proposition that a sentencing court may not consider non-charged civil violations of the tax code in calculating the tax loss attributable to a defendant under § 2T1.1. In the instant case, the defendant does not dispute that the government proved his failure to file tax returns for the years 1984–86 and 1989–91 amounted to criminal conduct under the tax code. Thus, we conclude that the district court properly considered this non-charged conduct in determining the defendant's base offense level under § 2T1.1.

**AFFIRMED.**