# UNITED STATES COURT OF APPEALS
# FIFTH CIRCUIT

_____

No. 01-40639

_____

BOBBY GLEN COOK,

Petitioner - Appellant,

versus

JANIE COCKRELL, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION

Respondent - Appellee.

Appeal from the United States District Court
For the Eastern District of Texas
USDC No. 1:99-CV-153

March 18, 2002

Before EMILIO M. GARZA, STEWART, and PARKER, Circuit Judges.

PER CURIAM[*]:

Bobby Glen Cook seeks leave to appeal the district court's denial of his habeas corpus petition. *See* 28 U.S.C. § 2253(c) (providing that a litigant may not appeal the denial of a petition for habeas corpus without first obtaining a certificate of appealability (COA) from a circuit judge).

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

We grant a COA only when the petitioner makes a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2).

Cook met Edwin Holder while fishing. Holder and Cook fished together and later met for drinks at Cook's campsite. After Holder went to sleep, Cook and two co-defendants decided to rob him. Cook shot Holder six times in the head at close range and disposed of the body in a river. Forensic evidence later indicated that Holder was asleep when shot. Cook confessed to the shooting, but said that he acted in self-defense. After a trial, a Texas jury convicted Cook of capital murder and sentenced him to death. After direct and collateral review in the state courts, Cook sought a petition of habeas corpus in federal court challenging both his conviction and sentence. The district court denied the petition. Cook now seeks a COA.

## I

Cook contends that permitting the testimony of Dr. James Grigson, a psychiatrist who testified as an expert as to Cook's "future dangerousness" at the sentencing phase of the trial, violated Cook's right to "fundamental fairness," presumably under the Due Process Clause of the Fourteenth Amendment or the Cruel or Unusual Punishment Clause of the Eighth Amendment. Dr. Grigson neither examined Cook nor interviewed anyone who knew him. Dr. Grigson nevertheless, in response to a hypothetical question, offered his expert opinion that Cook posed a future danger. It is unclear whether Cook's claim as to Dr. Grigson has been properly exhausted in state court, because Cook's trial lawyer did not object to admitting Grigson's testimony on either state law or constitutional grounds. Assuming *arguendo* that we have the power to review the claim, Cook's claim as to Dr. Grigson is foreclosed by *Barefoot v. Estelle*, 463 U.S. 880 (1983), in which the Supreme Court rejected a constitutional challenge to testimony in a death penalty case by exactly this psychiatrist,

Dr. Grigson, in response to a similar hypothetical question.

Despite the sharp criticism of *Barefoot* in a number of recent Fifth Circuit opinions,[1] we lack the power to undercut *Barefoot* on collateral review. The Antiterrorism and Effective Death Penalty Act (AEDPA) permits habeas relief only on the basis of "clearly established" federal law. 28 U.S.C. § 2254(d). "Clearly established federal law" refers to the "holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). No Supreme Court case has held that *Barefoot* is no longer the law. It cannot be "contrary to" or an "unreasonable application of" the Supreme Court's precedents, as required for habeas relief under § 2254(d), for a state court to decide an issue in the same way the Supreme Court has decided it on substantially the same facts. We have recently rejected two challenges in habeas petitions to *Barefoot* on the grounds that such challenges are not cognizable on collateral review. *Tigner v. Cockrell*, 264 F.3d 521, 526 - 27 (5th Cir. 2001) ("We decline Tigner's invitation to undercut *Barefoot*, because to do so on collateral review would constitute a new rule in violation of *Teague*'s non-retroactivity principle.")[2]; *Little v. Johnson*, 162 F.3d 855, 862 - 63 (5th

---

[1]*See, e.g., Flores v. Johnson*, 210 F.3d 456, 458 - 70 (5th Cir. 2000) (Emilio M. Garza, J. specially concurring) (noting that the Supreme Court's later decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), may have undermined *Barefoot*); *Gardner v. Johnson*, 247 F.3d 551, 556 n.6 (5th Cir. 2001) (pointing out Dr. Griffith's notoriety, his expulsion from the American Psychiatric Association, and the fact that he previously testified that he was 'one hundred percent certain' that a man who later was freed as innocent would kill again).

[2]It is unclear whether and to what extent *Teague v. Lane*, 489 U.S. 288 (1989), survives the passage of AEDPA. *Teague* forbade the federal courts to announce "new rules" of law on collateral review. *Compare Williams v. Taylor*, 529 U.S. 362, 412 (2000) (O'Connor, J. for the Court) ("the 'clearly established Federal law' phrase bears only a slight connection to our *Teague* jurisprudence") *with Williams*, 529 U.S. at 379 - 80 (Opinion of Stevens, J. for four justices) (contending that it "is perfectly clear that AEDPA codifies *Teague*" and observing that *Teague* "remains the law" after AEDPA).

Cir. 1998) (rejecting, on the strength of *Barefoot*, a similar challenge to Dr. Grigson's testimony).

Cook also challenges the admissibility of Dr. Grigson's testimony under Texas Rules of Evidence 702, governing expert witnesses, and 403, governing unduly prejudicial evidence. These contentions raise only issues of state law, and therefore cannot suffice to show the denial of a federal constitutional right.[3]

## II

Cook raises several ineffective assistance of counsel claims. Cook contends that his counsel's failure to argue self-defense in the opening statement of the guilt phase of the trial constituted ineffectiveness. Even assuming *arguendo* that the failure to argue self-defense was deficient, this claim does not satisfy the prejudice prong of the *Strickland* test. *See Strickland v. Washington*, 466 U.S. 668 (1984) (setting forth the test for ineffective assistance of counsel requiring both deficient performance by counsel and prejudice). The forensic evidence indicated that Holder was shot while sleeping, which seems to rule out Cook's self-defense claim. Moreover, Cook elected not to testify. Self-defense would have been a difficult argument to make without the defendant's testimony.

Cook alleges his trial counsel was ineffective in the character witnesses selected for the punishment phase of the trial. The attorney, Mr. House, called five witnesses to speak to Cook's good character. Four of the five witnesses had felony convictions. One was on parole for aggravated sexual assault of a child. Cook argues that calling felons as character witnesses cast him in a poor light and constituted ineffectiveness.

Calling the four felonious character witnesses did not constitute ineffective assistance of

---

[3]Judge Garza reaffirms his belief, as expressed in his special concurrence in *Flores v. Johnson*, 210 F.3d at 458 - 70, that the rationale for the holding in *Barefoot* may have been undermined by the Supreme Court's subsequent decision in *Daubert*. *See supra* note 1.

counsel because Cook insisted, against his lawyers' advice, on calling these witnesses. Assuming the client makes an informed decision, following one's client's instructions almost never constitutes ineffective assistance of counsel. *E.g.*, *U.S. v. Masat*, 896 F.2d 88, 91 - 94 (5th Cir. 1990); *see also Strickland*, 466 U.S. at 691 ("[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."). In *Masat*, an attorney followed his client's instructions in presenting many "seemingly ridiculous theories" and "generally pursued a course of defense that seemed likely to lose the case." *Masat,* 896 F.2d at 90. Because the client insisted on the attorney's tactics, we held that the attorney had not been ineffective. Here, the state court, after an evidentiary hearing during the state writ proceedings, found that the "character witnesses who appeared on Applicant's behalf during the punishment phase were called at the insistence of [Cook] against the advice of his trial counsel." R. at 217. Under AEDPA, this factual finding by a state court is "presumed to be correct." 28 U.S.C. § 2254(e)(1). Cook bears the burden of rebutting the presumption by clear and convincing evidence. *Id.* He has identified no evidence that he did not insist that the Mr. House call these witnesses. As such, House called these witnesses at Cook's own insistence, and House's actions in this regard were therefore not deficient.

Cook also contends that House was ineffective in not calling several character witnesses without criminal records, including his mother and his fiancée. The state habeas court determined that Cook never informed his attorneys about these witnesses. Assuming *arguendo* that the attorneys knew about the witnesses or should have discovered them in the course of a reasonable investigation, their not testifying did not prejudice the outcome. Most of the potential witnesses were relatives of Cook, and their testimony would have had little weight with the jury. Moreover, the prosecution presented Dr. Grigson's testimony. Cook himself vigorously argues the powerful weight of Dr.

Grigson's testimony. With a psychiatric expert telling the jury that Cook would surely kill again, having Cook's mother, fiancée, cousin, aunt and work supervisor testifying about his good qualities would almost certainly not help.

Cook's remaining claims of ineffective assistance focus on House's strategy for dealing with Dr. Grigson. House did not object to the admissibility of Dr. Grigson's testimony, nor did he introduce any rebuttal expert testimony on the dangerousness issue. The decision not to challenge the admissibility of the testimony was not deficient. House said he did not want to "accentuate" Dr. Grigson's testimony. An admissibility hearing, out of the presence of the jury, would have alerted the jury that the next witness's testimony was especially important. House made a strategic choice not to highlight Grigson's testimony. And if House called any rebuttal witnesses, it would have opened the door for the state to call one Dr. Gold. Dr. Gold was appointed by the court to assist the defense. Dr. Gold examined Cook and found him to be a future danger. If the defense had introduced an expert besides Dr. Gold to testify, the prosecution could have called Gold in rebuttal. The testimony of an expert who *had* examined Cook would have undermined the defense's argument that the prosecution's case was based only on a hypothetical question, and that the state's expert had never even spoken to Cook.

As Cook has not made a substantial showing of the denial of any constitutional right, we DENY his petition for a certificate of appealability.