**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**David C. OWEN, Defendant–Appellant.**

No. 93–3149.

United States Court of Appeals,
Tenth Circuit.

Jan. 24, 1994.

Thomas J. Bath, Jr. (James L. Eisenbrandt, Bryan Cave, with him on the brief), Overland Park, KS, for defendant-appellant.

Kurt J. Shernuk, Asst. U.S. Atty. (Jackie N. Williams, U.S. Atty., with him on the brief), Kansas City, KS, for plaintiff-appellee.

Before BALDOCK, ALDISERT * and BRORBY, Circuit Judges.

ALDISERT, Circuit Judge.

In this appeal by David Owen from his conviction on two counts of subscribing to false tax returns in violation of 26 U.S.C. § 7206(1), we must decide whether there was sufficient evidence to support Owen's conviction and whether the district court abused its discretion in ruling on certain evidence matters.

Jurisdiction was proper in the trial court based on 18 U.S.C. § 3231. This court has jurisdiction pursuant to 28 U.S.C. § 1291. The appeal was timely filed under Rule 4(b) of the Federal Rules of Appellate Procedure.

## I.

On November 18, 1992, David Owen was indicted on two counts of filing false income tax returns. In Count I, he was charged with willfully subscribing to a federal income tax return for Owen & Associates, Inc. for the tax year ending December 31, 1986, which he knew to be false because the return understated total income and overstated total deductions. In Count II, he was charged with willfully subscribing to a federal income tax return for Eagle Distributors, Inc. for the same tax year, which he knew to be false because the return overstated business deductions. Each count charged him with a separate violation of Section 7206(1).

In the mid–1980's, the Appellant formed several companies including Owen & Associates, a financial consulting enterprise designed to assist new and expanding companies and Eagle Distributors, a company created to purchase products for EDP Enterprises, a food service management company. Owen was the sole employee, stockholder and president of both companies.

* Ruggero J. Aldisert, United States Circuit Judge for the United States Court of Appeals for the Third Circuit, sitting by designation.

In addition to his diverse business interests, Owen was involved in Kansas politics for many years. He was elected to the Kansas state senate in 1968 and, in 1972, was elected lieutenant governor. He made an unsuccessful bid for governor in 1982.

Owen was also active in the campaigns of other Republican candidates running for office in Kansas, including Mike Hayden's 1986 campaign for governor. His support of Hayden's campaign gave rise to his unfortunate difficulties with the Internal Revenue Service.

### A.

Count I charged that Owen understated income and overstated business deductions in his company's income tax return. It alleged that Owen disguised political contributions to the Hayden campaign as business expenses and that these were improper deductions.

### 1.

Owen & Associates listed the sum of $5,000 as a consulting fee payable to Amvestors Marketing, a company formed by the Appellant to market single-premium life insurance policies and annuities through securities firms. The indictment charged that this payment from Owen & Associates was actually a reimbursement for contributions made to the Hayden campaign by Richard Halford, president of Amvestors, and his wife, as well as Elliott Kaplan, attorney for Amvestors, and his wife and Amvestors generally.[1] Testimony at trial revealed that Amvestors had not performed any consulting work for Owen & Associates.

On October 14, 1986, a $3,000 contribution to the Hayden campaign was made by Eagle, and on the following day, Owen & Associates paid Eagle $3,000. This payment was represented in the accounting records as a refund of consulting fees paid to Eagle by Owen & Associates.

An identical transaction took place in the same two day period between Kansas Microwave Inc., the Hayden campaign and Owen & Associates. The Appellant managed the affairs of Kansas Microwave, a company formed to design and build electronics. Kansas Microwave was located in the same office complex as Owen & Associates, Amvestors and Eagle.

### 2.

Part of the understatement of income charge in Count I of the indictment concerned business dealings between the Appellant and Paul Bryant Jr., president of AIM, Inc. In the early summer of 1986, Owen assisted Bryant in obtaining parimutuel racetrack licenses in two Kansas cities. On October 14, 1986, Bryant met with the Appellant and paid him $100,000. This sum became a source of great controversy between Owen and the IRS.

Owen testified that he believed the $100,000 was a loan, given to him pursuant to an oral agreement that he would receive a fee of 15 per cent of the race track's income if and when Bryant received a racing license. He said that he believed that he would have to pay the money back from his percentage of the racetrack's income. Bryant testified to the contrary at trial, stating that he gave the money to Owen to maintain his standard of living.

On October 15, 1986, Owen deposited the $100,000 into Owen & Associates' bank account. It was not reported as income on the 1986 corporate tax return. He testified that over a year later, on January 27, 1988, during a meeting between him, his tax attorney and Bryant's attorney, it was decided that the $100,000 would not have to be repaid to Bryant. They agreed that it was income, and consequently it was reported as such on Owen & Associates' 1988 corporate tax return. Significantly, the money was not reported on the 1986 return, the year in which the money was received.

### B.

Count II of the indictment charged that Eagle's 1986 corporate tax return overstated

---

**1.** On October 14, 1986, these parties actually contributed $3,000 each, for a total of $15,000 in contributions, to the Hayden campaign at the request of the Appellant. After an initial payment of $15,000 for "consulting fees," Amvestors returned $10,000 to Owen & Associates.

total deductions by $3,000. The government alleged a kind of Tinker–to–Evers–to–Chance transaction involving Owen-dominated business entities. It began with a contribution by Eagle to the Hayden campaign on October 14, 1986 and was followed by a check in the identical amount from Owen & Associates to Eagle. Two months later, on December 17, 1986, Eagle issued a $3,000 check to Financial Service Investment Company, a partnership in which Owen had a 52 per cent interest. Eagle's records show this as a rent/storage expense.

At trial, the government showed that Eagle had no products or equipment to store. Eagle merely ordered products for EDP Enterprises and had them shipped directly to EDP's facility in Missouri. It was the government's theory that the original $3,000 payment from Owen & Associates to Eagle was actually a reimbursement for the contribution it made to the Hayden campaign and that the December payment to Financial Service was intended to eliminate Eagle's taxable income as a result of the reimbursement by Owen & Associates. It was Owen's defense that he and John Palmer, president of EDP, had discussed the rental of a structure because some of EDP's suppliers wanted to ship directly to Eagle. Owen testified that Eagle's $3,000 check to Financial was to secure a storage facility in the event it became necessary for Eagle to store goods.

## II.

The Appellant was tried before a jury and was found guilty on both counts of the indictment. He then made unsuccessful post-trial motions for judgment of acquittal or a new trial. Subsequently, he was sentenced to a year and a day in prison on each count, the sentences to run concurrently. This appeal followed.

The Appellant argues that the district court erred (a) in denying his motion for judgment of acquittal as to both counts of the indictment because the evidence was insufficient to support the convictions, (b) in admitting evidence of similar acts pursuant to Rule 404(b) of the Federal Rules of Evidence and (c) in admitting into evidence the check register of Bryant's company, Aim, Inc.

When evaluating Owen's claim for insufficient evidence, we must view " 'all the evidence, direct and circumstantial, as well as all reasonable inferences drawn therefrom, in the light most favorable to the government.' " *United States v. Denny,* 939 F.2d 1449, 1451 (10th Cir.1991) (quoting *United States v. Levario,* 877 F.2d 1483, 1485 (10th Cir.1989)). We must decide whether, in light of the evidence presented, a rational trier of fact could have found the elements of the offense established beyond a reasonable doubt. *Id.*

We review the district court's decision to admit evidence of other acts under the abuse of discretion standard. *United States v. Sanders,* 928 F.2d 940, 942 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 142, 116 L.Ed.2d 109 (1991). We review evidentiary rulings in general under the abuse of discretion standard. *United States v. Young,* 952 F.2d 1252, 1259 (10th Cir. 1991). Only if this court has a " 'definite and firm conviction that the [trial] court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances' " should the ruling be reversed. *Id.* (quoting *United States v. Bonnett,* 877 F.2d 1450, 1458 (10th Cir.1989)).

## III.

We first address the contention that the government failed to produce sufficient evidence to sustain a verdict of guilty beyond a reasonable doubt on both counts of the indictment. To sustain a conviction under Section 7206(1), the government must prove (1) that the Appellant made and subscribed to a tax return containing a written declaration, (2) that it was made under the penalties of perjury, (3) that he did not believe the return to be true and correct as to every material matter and (4) that he acted willfully. *United States v. Kaiser,* 893 F.2d 1300, 1305 (11th Cir.1990).

Owen argues that the government failed to prove that he acted willfully. In the context of the criminal tax statutes, willfulness is defined as the " 'voluntary, intentional violation of a known legal duty.' " *Cheek v. United States,* 498 U.S. 192, 201, 111 S.Ct.

604, 610, 112 L.Ed.2d 617 (1991) (quoting *United States v. Bishop,* 412 U.S. 346, 360, 93 S.Ct. 2008, 2017, 36 L.Ed.2d 941 (1973)).

### A.

As to the $100,000 understatement of income, the Appellant argues, without citing to the record, that every witness who testified regarding the $100,000 payment said that the transaction was a loan. Brief of Appellant at 22. He asserts also that no evidence was presented that he ever wavered from his belief that he had an obligation to repay Bryant and that his conduct supports his innocence.

Owen argues that events which took place after the filing of Owen & Associates' 1986 return serve to strengthen his position: When the oral agreement between Owen and Bryant was finally reduced to writing on May 7, 1987, it included a clause stating that any sums advanced by Bryant's company, AIM, Inc., would be done so "without interest"; when a termination of the agreement was negotiated in 1988, it was Owen who insisted that the $100,000 be part of the negotiations; and after it was decided that "the loan" should be forgiven, he included the $100,000 as income on Owen & Associates' 1988 return.

Owen's accountant also testified that when he told Owen that the company could declare the $100,000 as income by amending the 1986 return, reaping a $700 tax savings, Owen refused because he believed that the amendment would be untruthful. Owen emphasizes that both his accountants and his attorney testified that he was honest and had never asked them to do anything illegal, improper or unethical.

What the Appellant has done here, as is often the case in an appeal raising a sufficiency of the evidence contention, is to pick and choose from the record those bits of evidence that favor him. Had that been the only evidence before the jury, perhaps he would have been successful. On appeal, however, we are required to consider the entire record "in the light most favorable to the government to determine whether all the evidence and reasonable inferences to be drawn therefrom is sufficient enough to show guilt beyond a reasonable doubt." *United States v. Dickey,* 736 F.2d 571, 583 (10th Cir.1984).

We are satisfied that the following record evidence sustains the government's position:

1. The Appellant had twenty years of experience as a banker and knew how to create loan documents. App. at 1042.

2. In the early summer of 1986, the Appellant assisted Bryant in the formation of a charitable organization to begin the parimutuel racetrack licensing procedure in two Kansas cities, in locating possible sites for the race track and in working with attorneys and architects in the planning of the racetrack. *Id.* at 1050–51.

3. When the Appellant first received the $100,000 check from Bryant, he deposited it into Owen & Associates' bank account. On the deposit slip, he wrote that $50,000 was a consulting fee and $50,000 was a note payable to AIM. *Id.* at 514, 494.

4. In late February or early March of 1987, the Appellant explained to Mark Crow, his accountant, that the payment was for his living expenses and that he planned on spending half of the money in 1986 and the other half in 1987. *Id.* 765–67.

5. After questioning Owen about the entry, Crow advised him that he could not claim the payment in that manner. Owen then indicated that he had an obligation to repay the full amount. *Id.* at 767.

6. Paul Bryant, Jr. testified that he paid Owen the $100,000 to spearhead Bryant's effort to obtain a parimutuel license in Kansas. *Id.* at 867, 893. He stated that the money was Owen's to maintain his standard of living. *Id.* at 875–76.

7. AIM's check register indicated that Bryant had labeled the $100,000 check "Consultant, Dave Owen Associates." *Id.* at 881, 897.

There is even more. What Owen said from the witness stand was sometimes contradictory. For example, he testified that he believed the $100,000 to be a loan, yet when he deposited the check, he referred to at least $50,000 of it as a consulting fee. He

said that the subsequent written agreement referred to an "advance," yet no specific reference to a loan or to the $100,000 appeared in the writing.

We now turn to the remaining charges of understated income contained in Count I.

### B.

The government alleged that three transfers were improperly reported as deductions on Owen & Associates' 1986 tax return—a $3,000 transfer to Eagle, a $3,000 transfer to Kansas Microwave and $5,000 worth of transfers to Amvestors. The Eagle and Kansas Microwave transfers were listed as refunds of consulting fees, and the Amvestors transfer was recorded as a payment of consulting fees.

Owen admits that the monies were used to make campaign contributions and that these transactions permitted Owen & Associates to take $11,000 in deductions as business expenses. He disputes, however, that he willfully reported these transactions as deductions on the 1986 return.

Again the Appellant picks and chooses parts of the record favorable to him. For example, he emphasizes that there was testimony that the terms "consulting fees" and "refund of consulting fees" were usual and normal business terms used by both Owen and Owen & Associates and that it was common for the several companies to transfer money between themselves. Owen also notes there was no evidence that he made any attempt to hide, disguise, conceal or manipulate these transactions, that he sought advice from his attorney concerning the legality of these contributions and that he believed the transfers were proper. Finally, he maintains that he gave no thought to the tax consequences of the entries described as consulting fees when he made them.

Arrayed against this testimony, however, is the following evidence, which, if believed by the jury, supports his conviction:

1. Owen knew political contributions were not deductible for tax purposes. *Id.* at 552–53.

2. He directed how the income and payments for reimbursements of contributions would be classified in the books and records of the various corporate entities. *Id.* at 207–08, 1038–39.

3. He knew that when he refunded the $3,000 contributions from Kansas Microwave and Eagle it would result in a reduction of Owen & Associates income and would be so reflected in the corporation's records. *Id.* at 1055.

4. All of the contributions to the Hayden campaign were made on October 14, 1986, and the "refunds" from Owen & Associates were received within 48 hours.

5. He reviewed the corporate account records, and he knew that they would be furnished to the tax preparer. *Id.* at 1055–56.

6. The term "refund of consulting fees" was used by Owen only for the transactions involving Eagle and Kansas Microwave. *Id.* at 285–86, 944.

7. Owen's own testimony established that Owen & Associates knowingly claimed the $15,000 payment to Amvestors Marketing as a business expense when it was not. He testified that the $15,000 was a loan to Amvestors, but that it was too much "hassle" to prepare a written note reflecting the transaction. *Id.* at 1032.

### C.

Drawing all inferences in the light most favorable to the government, as we are required to do, we conclude that there was sufficient evidence for a trier of fact to find that all of the elements of a Section 7206(1) violation involving the $100,000 and the three transfers had been established beyond a reasonable doubt.

### IV.

Count II charged Owen with intentionally falsifying the 1986 return for Eagle by overstating the company's total deductions. Owen argues that the government failed to prove that the transfer from Eagle to EDP Enterprises of $3,000 for storage/rent was improper.

Owen testified that in 1986 some companies supplying Eagle and EDP indicated that

they wanted Eagle to take shipment of goods. Pursuant to that possibility, Owen asserts that he and the President of EDP discussed storing the goods on land owned by Financial. Under this scenario, the $3,000 check to Financial constituted a deposit for a storage facility in the event it was necessary for Eagle to store goods. Owen maintains that there was no tax advantage gained by the transfer to Financial.

The government produced evidence that on October 14, 1986 Eagle made a $3,000 contribution to the Hayden campaign for which it received a $3,000 check from Owen & Associates the next day. *Id.* at 104, 751. Two months later Eagle paid $3,000 to Financial for storage expenses. The government contends that the $3,000 check to Financial for "storage" expenses reduced Eagle's taxable income to $198, the same figure that would have existed if not for the $3,000 refund from Owen & Associates. Evidence at trial revealed that Eagle's sole function was to order products for EDP and to have those products shipped directly to EDP. Eagle had no employees or products, and no products were ever stored at the alleged facility. The government describes the alleged expense as no more than the opportunity to eliminate the taxable income Eagle was going to have to absorb from the reimbursement for its political contribution.

Whether Owen intentionally overstated Eagle's deductions was a question of fact for the jury. It was not an issue of law, but one of resolving controverted evidence, and, in this contest for believability, the Appellant lost. Apparently, the jury was not convinced that a company, which had no employees, no products to store, no storage facilities and merely ordered products that were shipped to EDP, could incur a bona fide $3,000 storage expense. Considering all the evidence, both direct and circumstantial, we cannot say that as a matter of law there was insufficient evidence to support the Appellant's conviction.

We now turn to the remaining questions raised by the Appellant. We must determine whether the court abused its discretion in receiving certain evidence.

## V.

Owen charges that the district court erred by allowing evidence of alleged similar acts to be admitted under Rule 404(b) of the Federal Rules of Evidence. He says that the district court admitted three categories of similar acts evidence: (1) contributions by David C. Owen's wife to the Hayden campaign in 1986 as well as payments to her from Kansas Microwave; (2) contributions made by Owen's employees and EDP to the Hayden campaign in 1986 as well as the funding source for those contributions; and (3) the 1986 income tax return of Amvestors and the reporting of income and expenses for that year. *See* Brief of Appellant at 32–33. This evidence was introduced solely as proof of plan and knowledge under Rule 404(b), which provides in relevant part:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. . . .

Owen asserts that the government failed to meet its burden of showing that the similar acts evidence addressed a material issue or that it was relevant. In addition, he argues that this evidence was extremely prejudicial. We address each contention in turn.

## A.

We first articulated the rule that the government bears the burden of showing that the proffered evidence is material or relevant in *United States v. Kendall,* 766 F.2d 1426, 1436 (10th Cir.1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986). Thereafter, the Supreme Court outlined the proper guidelines for admission of Rule 404(b) evidence in *Huddleston v. United States,* 485 U.S. 681, 691–92, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988). Subsequently, we have held that although the *Kendall* requirement is still viable, "if the transcript reflects that the 'decision to admit' was proper under the requirements of *Huddleston,* any failure to adhere to *Kendall* will neces-

sarily be harmless." *United States v. Record,* 873 F.2d 1363, 1375 n. 7 (10th Cir.1989). Thus, we need only inquire as to whether the admission of this other acts evidence satisfied the requirements of *Huddleston.*

In *Huddleston,* 485 U.S. at 691–92, 108 S.Ct. at 1502, the Court concluded that similar acts evidence is admissible if it complies with the general requirements of the Federal Rules of Evidence:

> first, from the requirement of Rule 404(b) that the evidence be offered for a proper purpose; second, from the relevancy requirement of Rule 402 ...; third, from the assessment the trial court must make under Rule 403 to determine whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice; and fourth, from Federal Rule of Evidence 105, which provides that the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

(citations & footnote omitted).

### 1.

■ Initially, Owen argues that the similar acts evidence was not admissible because his knowledge and plan were not material issues in the case and, therefore, the evidence did not satisfy Rule 404(b). The government responds that Owen's knowledge of reimbursements to political contributors and of the manner in which those transactions were recorded in corporate records was relevant and probative of his knowledge that the statements contained in the returns were false. In addition, the government contends that the similar acts were relevant to prove Owen's plan to disguise political contributions. The district court specifically found that the "fact that [Owen] had structured similar transactions in the past, in conjunction with the totality of evidence in the case, is probative of defendant's plan and/or knowledge in taking the alleged action." App. at 61.

Title 26 U.S.C. § 7206(1) provides in part: Any person who—

(1) Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter ...

shall be guilty of a felony....

Under this statute, the government must establish beyond a reasonable doubt that Owen did not believe the returns to be true and correct as to every material matter and that he acted willfully. Owen's knowledge is clearly a material issue. The government was required to prove that he "knew" that the returns for Eagle and Owen & Associates were false, i.e., that the $3,000 payments were reimbursements for political contributions rather than legitimate business expenses.

We believe that a plan to collect contributions from different companies and employees under Owen's control was material. It was probative of willfulness. The government sought to prove that Owen's plan demonstrated an awareness of the tax laws and the laws regarding political contributions by corporations and a "willful" attempt to avoid the limitations imposed by those laws. The challenged evidence, being material to an important issue, was introduced for a proper purpose.

### 2.

■ We confess to some difficulty in understanding the Appellant's argument regarding relevancy. He contends that in order to be admissible to show a plan, the similar acts must assist in establishing that he knew the transactions were criminal. In addition, he argues that in order to properly fit within a "plan," the similar acts evidence must be part of his "goal" of filing false tax returns for Eagle and Owen & Associates. Brief of Appellant at 39. He seems to argue that these transactions have no relationship to Owen & Associates, but only to political contributions. From this he argues that the evidence regarding his wife's contributions had no impact on the records or tax returns of either company. He makes a similar argument with regard to the EDP transactions.

The government responds that the similar acts evidence was relevant because it was highly probative of Owen's knowledge and plan. According to the government, part of its proof in Count I involved the $15,000 payment from Owen & Associates to Amvestors, which was classified as a consulting fee. First, the government argues that the Amvestors evidence was necessary to show how the $15,000 was spent. Amvestors apparently used the money to reimburse individual employees for contributions to the Hayden campaign rather than to pay for consulting fees. It was probative of his plan to reimburse contributions and his knowledge of the corporation's claim that the payments were an expense.

Second, the Rule 404(b) evidence involving Owen's wife established the exact same course of events: no services were performed by Mrs. Owen; the $3,000 payment from Kansas Microwave funded her contribution; and the Appellant recorded the payment as a consulting fee. The evidence showed that the $3,000 payment caused Kansas Microwave to overstate their expenses. According to the government, the evidence is relevant to the issue of Owen's overall plan and knowledge of the scheme charged. The EDP transactions were similarly relevant.

We agree with the government for the reasons stated, especially because most of these events took place within the same two day period and each payment matched exactly the $3,000 campaign contributions made by those involved.

#### 3.

Owen maintains that the evidence of similar acts was extremely prejudicial, particularly given the "sheer magnitude" of the evidence. Therefore, admission of these similar acts violated Rule 403, which provides that evidence should be excluded if its relevancy is "substantially outweighed by the danger of unfair prejudice." He emphasizes that in addition to the numerous documents reflecting the transfer of funds or campaign contributions, there were at least seventeen separate inquiries regarding similar acts. He argues also that the government's closing argument increased the possibility of prejudice from the similar acts evidence.

In its closing argument, the government stated:

> But ·in this particular case the government's going to tell us that the defendant's intent was to falsify those tax returns and that he knew it when he signed it.

> And what's the best piece of evidence—not the best maybe, that's up to you, what's one piece of evidence that you can look at and determine that? And it's a piece of evidence that the Court has cautioned you on. It's not a crime with which he is charged with ... It's the transaction with Beverly Owen.

App. at 1126. The prosecutor then noted that the transaction was admitted to show the Appellant's plan and knowledge. *Id.* at 1127. Owen did not object to these comments at trial.

We do not believe that the similar acts evidence, even in conjunction with these comments and those made at trial, was substantially more prejudicial than probative. The district court properly gave the jury limiting instructions, both when the evidence was introduced and during his instructions at the close of trial. Moreover, the comments made by the government in the closing argument did not rise to the level of plain error.

#### B.

Owen next declares that the district court erred by giving confusing, inconsistent and prejudicial limiting instructions concerning the purpose of the similar acts evidence. He says that the trial court initially instructed the jury that the evidence of similar acts was admitted for the "purpose of proving the defendant's knowledge or plan." *Id.* at 111. The court then reversed itself and told the jury that later exhibits could be considered as evidence of the "defendant's intent or knowledge." *Id.* at 112, 837–38. After the second reference to intent, a bench conference was requested by Owen, and the court corrected itself, indicating that the exhibits could only be used to show Owen's plan or knowledge. *Id.* at 839.

Owen also complains that the district court on several occasions either failed to provide a limiting instruction or directed the jury to refer to its previous instructions. Finally, he says that during a bench conference, the district court indicated its unfamiliarity with Rule 404(b) and uncertainty as to the limited purposes of the evidence by asking "What's the difference?" between intent or plan and knowledge. *Id.* at 859. This comment was made only to counsel.

Notwithstanding these numerous complaints, Owen admits that the district court did give a final limiting instruction to the jury covering only plan. and knowledge.

In response, the government notes that no objection was made to the form of the court's final limiting instruction and that when defense counsel noted an inconsistency in the court's instructions, the court reiterated to the jury that the purpose of the evidence was to show plan and knowledge.

 We are satisfied that the court properly instructed the jury on the limited purpose of the similar acts evidence, satisfying the requirements of *Huddleston.* If any error was committed by the district court in giving cautionary instructions during the reception of testimony, it was minor and immediately corrected by the court after notice from counsel.

### C.

To summarize, we conclude that the trial court did not abuse its discretion by admitting evidence of prior similar acts committed by the Appellant, because the evidence satisfied the requirements of *Huddleston* and was admitted with the proper limiting instructions.

### VI.

 Finally, the Appellant contends that the district court abused its discretion by admitting AIM's check register into evidence. He says that the register is irrelevant because it was not written contemporaneously with the transaction, but over two and a half months later.

The district court concluded that:

the evidence was relevant in that it disclosed that Mr. Bryant understood the $100,000 transaction to be a payment for services. It was therefore probative of whether defendant possessed a good faith belief that the transaction was a loan.

App. at 62. At best, this evidence was merely corroborative of Bryant's oral testimony that the money was for payment of services; at least, it qualifies as a business record. The fact that the entry was made a few months later goes to the weight of the evidence rather than its admissibility. The district court did not abuse its discretion in admitting the check register.

### VII.

We have carefully considered the issues presented by the Appellant in this complex case. To the extent not discussed herein, any other contentions have been considered and rejected.

We AFFIRM the judgment of the district court.