UNITED STATES of America,
Plaintiff–Appellee,

v.

Ross HUEBNER, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

John WILLIAMS, Defendant–Appellant.

Nos. 92–10543, 92–10577.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 16, 1993.

Decided Dec. 16, 1994.

John G. Watkins, and Susan N. Wasko, Las Vegas, NV, for defendants-appellants.

Robert E. Lindsay, Alan Hechtkopf, & Karen Quesnel, U.S. Dept. of Justice, Tax Div., Washington, DC, and Karen Moss & Steven Ward, Las Vegas, NV, for plaintiff-appellee.

Before: FAIRCHILD,* BEEZER and WIGGINS, Circuit Judges.

## ORDER

The opinion filed February 10, 1994 and published at 16 F.3d 348 is withdrawn and the attached per curiam opinion is filed in its place. With the opinion withdrawn, the petitions for rehearing with suggestions for rehearing en banc are moot. The parties may file a renewal of the petition for rehearing with suggestion for rehearing en banc upon the filing of a new decision by the court.

## OPINION

PER CURIAM:

### OVERVIEW

Ross Huebner was convicted of twelve counts of aiding and abetting taxpayers in the attempted evasion of payment of their income taxes for various years. 18 U.S.C. § 2; 26 U.S.C. § 7201.** Huebner and John Williams were also convicted of conspiracy to commit the attempted evasion offense and to defraud the United States by obstructing collection of income taxes. 18 U.S.C. § 371.

These convictions arose out of the participation of Huebner and Williams in the activity of John Freeman in assisting numerous taxpayers (actually tax protesters) whose income taxes the IRS was trying to collect by levying on wages. Freeman was also indicted, but was found incompetent to stand trial. The pattern, probably devised by Freeman, was typically as follows:

When a person, whom we will refer to as "taxpayer" although usually more accurately described as a nontaxpayer, would bring Freeman an IRS notice of levy on his wages, Freeman would tell the taxpayer that he

---

* Honorable Thomas E. Fairchild, Senior Circuit Judge, Seventh Circuit, sitting by designation.

** In each count, Huebner was charged with aiding and abetting one taxpayer in the attempted evasion of payment of his income tax for a particular calendar year. In every count relating to one taxpayer, the affirmative attempt consisted of the same single filing by that taxpayer of a false and fraudulent voluntary petition for bankruptcy. As to taxpayer Sproles, there were separate counts for his tax due for 1979, 1980, and 1981; as to

Taylor, for 1981, 1982, 1983, 1984, and 1985; as to the Barnes, for 1982, 1983, 1984, and 1985.

We perceive a serious question whether a single filing in bankruptcy could be deemed several distinct offenses of attempted evasion—one for each calendar year. Defendant Huebner, however, has not raised this question, nor has the government addressed it. We do not decide it. The only cumulative consequence here of conviction of twelve distinct offenses is the imposition of twelve $50 special assessments.

should file in bankruptcy because that would stop the levy. Freeman would supply petition forms which the taxpayer would fill out and sign. Freeman would have the taxpayer sign a backdated promissory note to Constitutional Sulphur (apparently Freeman). This would appear to establish a debt of many thousands of dollars, and require substantial monthly payments. Freeman specified the amount, large enough so that if paid the taxpayer's income would be largely or wholly absorbed. This indebtedness, which was clearly sham, and the payments, were shown on the bankruptcy forms. Huebner would prepare the notes for the taxpayer's signature and Freeman would give "receipts" for previous payments, which had not been made, and promise to give receipts for future payments, also not actually to be made. He assured the taxpayers he would not collect the notes. Williams would usually sign the note as witness, and take the petition to court and file it.

Upon filing, the IRS would be notified, and because of the automatic stay (11 U.S.C. § 362(a)) the IRS would immediately release the levy. The stay would remain in effect, unless lifted, until dismissal or other termination of the bankruptcy case or other event specified by statute. Most, if not all, the tax obligations involved in this case would not be dischargeable in bankruptcy. 11 U.S.C. § 523(a)(1). The maneuver engineered by Freeman, with the participation of Huebner and Williams, would temporarily stall the process of collection by levy or other proceeding.

While the stay remained in effect, taxpayers would receive their wages in full (except for normal withholding). Had they not obtained the stay and release, they would have received only the portion exempt from levy, and the balance would have been paid to the IRS to apply on their taxes. Thus the stay deprived the IRS of payment of those balances.

## DISCUSSION

### I. Attempt to Evade or Defeat Payment of Tax

26 U.S.C. § 7201 provides that "[a]ny person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall ... be guilty of a felony...."

We are not concerned in this case with an attempt to evade or defeat determination of liability for tax, but rather with an attempt to evade or defeat payment. It has been recognized that violation of § 7201 "includes the offense of willfully attempting to evade or defeat the *assessment* of a tax as well as the offense of willfully attempting to evade or defeat the *payment* of a tax." *Sansone v. United States,* 380 U.S. 343, 354, 85 S.Ct. 1004, 1011, 13 L.Ed.2d 882 (1965); *see United States v. Waldeck,* 909 F.2d 555, 556–60 (1st Cir.1990), and decisions there cited.

As defendant Huebner correctly argues, the filing of a petition in bankruptcy will not affect the liability of Sproles, Taylor, and Barnes for the income taxes involved here. The indictment charges Huebner with willfully aiding, abetting, advising and counselling Sproles and the others in "the attempted evasion of the payment of the income tax...." Although the act of filing the petition was not an attempt to conceal income or otherwise escape liability for tax, it did put beyond the reach of the IRS a portion of the taxpayers' wages during the period the stay remained in effect. The question is whether this act was punishable as an attempt to evade or escape payment.

On June 23, 1986, Sproles filed a voluntary individual petition for relief under Chapter 7. An accompanying schedule showed total monthly income of $850 and total monthly expenses of $1,650, of which $1000 was payable to Constitutional Sulphur. The unsecured claim of Constitutional Sulphur was shown as $120,000. The bankruptcy case was dismissed July 25, 1986.

On September 18, 1986, Taylor filed a voluntary individual petition for relief under Chapter 11. An accompanying schedule showed total monthly income of $2,600 and total monthly expenses of $2,930.76, of which $800 was payable to Constitutional Sulphur. The unsecured claim of Constitutional Sulphur was shown as $96,000. On October 23, 1986, Constitutional Sulphur accepted appointment as a member of the Committee of

Unsecured Creditors. The bankruptcy case was dismissed May 5, 1987.

On July 18, 1985, Richard and Lillian Barnes filed a voluntary joint petition for relief under Chapter 11. An accompanying schedule showed total monthly income of $2,430.60 and total monthly expenses of $2,531.39, of which $1,000 was payable to Constitutional Sulphur. The unsecured claim of Constitutional Sulphur was shown as $120,000. The bankruptcy case was dismissed May 5, 1987. The Barneses also filed a voluntary joint petition October 22, 1986, with similar showings except for monthly income of $600 and expenses of $2,597.24. The bankruptcy case was dismissed December 10, 1987. Constitutional Sulphur was a member of the Creditors' Committee.

The evidence suggests that Freeman believed and told his clients that it would be necessary to show substantial debt and an excess of monthly expenses over income in order to file a valid bankruptcy petition. Undercover Agent Edwards (posing as a taxpayer subject to a levy) testified that Freeman advised him to go bankrupt:

> [Answer:] Mr. Freeman said that it didn't matter how much money I was making, that he would have me sign a promissory note to Constitutional Sulphur which would put me in debt and cover it, it should make it okay.
>
> [Question:] Cover what?
>
> [Answer:] The fact that I was going bankrupt.

June 8, 1982 Tr. at 65. Freeman told Edwards of the notes to Constitutional Sulphur of other individuals who had gone bankrupt. "Mr. Freeman indicated that these notes were the basis for the bankruptcy." *Id.* at 68.

■ The Bankruptcy Act does not require any particular degree of financial distress as a condition precedent to a petition seeking relief. One of the difficulties in this case is that filing of petitions that did not contain the false assertions of debt and excess of expenses over income, contained in the petitions now involved, would also have triggered the automatic stay and release of levy.

At trial, the government conceded "there's nothing wrong with filing a bankruptcy petition in order to get a levy lifted." June 18, 1992 Tr. at 44–45. IRS Revenue Officer Fite, a member of the Special Procedures Branch, testified that the Constitutional Sulphur indebtedness was not necessary for the bankruptcy petitions to be filed. Thus had the petitioners omitted the false assertions of debt and required monthly payments to Constitutional Sulphur, the automatic stay would have gone into effect, and the levies released, but the filing would not constitute an unlawful attempt to evade payment of tax. It is entirely clear that taxpayers had not chosen bankruptcy as a proceeding in which to establish that they did not owe the taxes involved.

If the conviction can be sustained in this case, it must be because the false assertions added something to the purpose of the attempt, substantial enough to make it criminal. We conclude that the conviction can be upheld on that basis.

The false assertions of heavy debt and financial distress must have been made with a purpose. Perhaps Huebner and the filers labored under the belief that the petition could not legally be filed, or might be readily dismissed, unless debt and financial distress were shown. Or perhaps they thought that it would be important to make resort to bankruptcy seem more plausible. Perhaps they supposed that showing of distress would make less likely a dismissal of a Chapter 7 case for substantial abuse of the provisions of that Chapter (11 U.S.C. § 707(b)), or the IRS would be more willing to suspend collection for hardship, or less likely to seek a lifting of the automatic stay.

In any event, the purpose of the assertions must have been thought important. The taxpayers not only lied about the facts, but they and Freeman and Huebner went to some trouble to fabricate documentary support.

■ Although the extent to which these false assertions increased the success of the maneuver, *i.e.,* the amount of which the IRS was deprived, may be difficult to assess, it is the "willful and positive attempt to evade tax in any manner or to defeat it by any means" which constitutes the offense, rather than the

success or consummation of the scheme. *Spies v. United States,* 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943).

Defendant Huebner relies on this court's statement in *Edwards v. United States:*

> Evasion and defeat, as we understand their use in this section [§ 7201], contemplate an escape from tax and not merely a postponement of disclosure or payment.... [The evasion] focuses on the accused's intent to deprive the Government of its tax moneys, and this requires more than just delay.

375 F.2d 862, 867 (9th Cir.1967) (footnotes omitted).

The statement in *Edwards* must be read in the light of the facts of that case, which are significantly different from those now before us. Defendant Edwards was a tax attorney who prepared returns for client taxpayers who supplied him with funds with which to pay their taxes. He deposited these funds in a trust account, from which at times he withdrew money for personal purposes. "Appellant's troubles with his trust account led him to prepare tax returns, collect the amount of tax due and then fail to file the return or make the payment." *Id.* at 865. The court noted that Edwards had obtained six month extensions "for a number of the returns cited in the indictment. He thereby disclosed to the Government that as to those taxpayers a return was due." *Id.* at 867.

The *Edwards* court went on:

> It thus appears that appellant's purpose was to take advantage of the time lag in Government investigation of delinquent returns to tide him over during a period of personal financial hardship. Nothing in the record would suggest that he ever intended the permanent evasion of any of his clients' taxes.
>
> One pursuing a path such as that of appellant might eventually fall so far behind that no reasonable man could believe that he would ever catch up. It does not appear, however, that appellant's straits had become that serious.

*Id.* at 867.

■ Here, as in *Edwards,* there is evidence that the defendants attempted to evade the payment of taxes. The distinguishing factor is that in *Edwards,* there was insufficient evidence of any willfulness on the part of the tax preparer permanently to evade payment. In the case before us, however, the evidence is strong that these taxpayers do not intend voluntarily to pay their tax obligations. Their purpose was to deprive the IRS of the amounts of money collectible under the levies for as long as they could. The "delay" to which the *Edwards* court referred was a postponement or delay in payment, consistent with an intent ultimately to make payment. The taxpayers in the present case obstructed the IRS collection effects with the purpose of permanently depriving the IRS of the money which it would have collected if it had not been forced to release its levy, and without any suggestion that they intended to make voluntary payment eventually.

*Edwards* did not distinguish between evasion of determination of tax liability and evasion of payment, and defendant there was delaying both. In *United States v. DeTar,* 832 F.2d 1110 (9th Cir.1987), the taxpayer had filed income tax returns, reporting a substantial amount due, but paid only a nominal portion. He placed assets in the names of nominees and beyond the reach of process. He dealt primarily in cash. The likely effect of his conduct would be to conceal assets and avoid collection. He was convicted of willfully attempting to evade and defeat payment of tax in violation of § 7201. We reversed on grounds that the judge should have instructed the jury regarding a lesser included offense. We did emphasize, however, that there was sufficient evidence to support a conviction of a violation of § 7201. The case now before us does not involve concealment of assets, but does involve placing particular funds beyond the reach of the IRS levy. The amounts protected from collection are probably much larger in *DeTar,* but on principle, *DeTar* supports the convictions for evasion of payments by compelling the release of the levies here.

## II. Conspiracy to Defraud the United States

Count One of the indictment charged Huebner and Williams, along with Freeman and

several taxpayers whose cases were severed, with conspiracy in violation of 18 U.S.C. § 371. That section punishes for conspiracy "either to commit any offense against the United States, or to defraud the United States, or any· agency thereof in any manner or for any purpose...." Count One charged a conspiracy both (1) to commit an offense (evasion of payment of income taxes in violation of 26 U.S.C. § 7201) and (2) to defraud the United States by impeding, impairing, obstructing, and defeating the lawful government function of the IRS in the collection of income taxes.

We have decided in Part I of this opinion that the bankruptcy filings and accompanying falsifications, combined with the defendants' willful intent, could be found to constitute the offense of evasion of payment of tax in 26 U.S.C. § 7201. The question is close, however, and if we were to be found wrong, the question would arise whether the agreement proved, to make these filings in order to obstruct collection, could be found to be a conspiracy to defraud the United States in the manner charged. We conclude that it could.

Although this branch of § 371 speaks of a purpose "to defraud the United States ...," the statute "reaches 'any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government.'" *Dennis v. United States*, 384 U.S. 855, 861, 86 S.Ct. 1840, 1844, 16 L.Ed.2d 973 (1966) (citations omitted); *see United States v. Little*, 753 F.2d 1420, 1443 (9th Cir.1984) (conspiracy to obstruct collection of income taxes punishable under § 371); *accord. United States v. Jerkins*, 871 F.2d 598, 602 (6th Cir.1989); *United States v. Rosengarten*, 857 F.2d 76, 79 (2d Cir.1988), *cert. denied*, 488 U.S. 1011, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989). There must, however, be an agreement to obstruct by "deceit, craft or trickery, or at least by means that are dishonest." *United States v. Caldwell*, 989 F.2d 1056, 1058–59 (9th Cir.1993) (quoting *Hammerschmidt v. United States*, 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924)).

■ The filing of a bankruptcy petition by one who owes income tax, causing the automatic stay to arise, surely obstructs, for a time, the collection of the tax. Nevertheless, one who files in order to seek the protection which the Bankruptcy Code is really intended to provide, would scarcely be charged with the purpose to defraud the United States. Perhaps it could be argued that a filing for the sole purpose of obstructing the collection of income taxes which are not dischargeable and are no longer subject to challenge, as the jury could find in this case, is sufficiently "dishonest" so that there is a purpose "to defraud". The government did not try the case on that theory nor argue it on appeal, and we do not decide that question. In this case, however, it was also charged and proved that fraudulent promissory notes were prepared and signed and that the statements were false in listing the spurious debt and required monthly payments to Constitutional Sulphur, so that the taxpayer-petitioners' total monthly expenses would approximate or exceed total monthly income.

Thus the question would become whether the false assertion of debt and payments to Constitutional Sulphur supplied the element of dishonesty required for a conspiracy to defraud even if the intent to use the automatic stay to obstruct collection, without more, did not. We think it did, for the following reasons.

The false assertion created a deceitful appearance of financial hardship and a readily understandable reason for seeking the protection of bankruptcy. The automatic stay, although it could be lifted earlier, would terminate if the bankruptcy case were dismissed. The facts falsely asserted would tend to render less likely a dismissal of a Chapter 7 case for substantial abuse of the provisions of that chapter (§ 707(b)). There was testimony that the IRS may settle a claim in return for a promise of installment payments, based on ability to pay, and may suspend collection where hardship is shown. The facts falsely claimed might affect the IRS' willingness to suspend collection or settle its claim.

Therefore, the convictions of conspiracy to defraud the United States could be sustained even if the object of the conspiracy did not

amount to an offense against the United States.

### III.  Other Defense Arguments

#### A.  Claim of Change of Theory During Trial

Huebner contends that he was tried and convicted on theories not alleged in the indictment. We are satisfied, however, that the government's theory at trial was consistent with the charges, and are unpersuaded by his argument that conviction was the product of confusion.

#### B.  Motion for Mistrial

■ Huebner, Williams and five taxpayers were originally brought to trial. Each taxpayer was charged with conspiracy in Count One and with several counts of attempted tax evasion. Much of the evidence relevant to each taxpayer was not relevant to the other four unless and until a single conspiracy involving all was established. During the trial, the court granted severance to the five taxpayers. The situation was somewhat different as to Huebner and Williams because of their continuing involvement with Freeman and the taxpayers.

Huebner now argues that the court erred in denying him a mistrial after severance of the others.

The court instructed the jury that evidence admitted solely as to one of the severed defendants should not be considered against Huebner or Williams unless there was a later, different instruction. Much of the evidence was, in fact, relevant to the charges against Huebner, and he has not demonstrated which evidence was prejudicial to him. The denial of mistrial was not an abuse of discretion.

#### C.  Juror Requests for Evidence

■ Judge Pro permitted the jurors to pass up notes requesting evidence on particular points. He would inform counsel of the request. Huebner argues that this practice prejudiced him because "it allowed the prosecutor to become a friend of the jurors, and . . . it allowed the jury to participate in the production of evidence (acting like attorneys)." Huebner Br. at 17.

The procedure was entirely neutral, and Huebner does not point out prejudice resulting from any of the few questions asked. There was no error or abuse of discretion. *See United States v. Gonzales,* 424 F.2d 1055, 1056 (9th Cir.1970); *United States v. Callahan,* 588 F.2d 1078, 1086 (5th Cir.), *cert. denied,* 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979).

#### D.  Special Verdict

Both defendants argue that it was error not to submit a special verdict which would show whether the jury found a conspiracy to evade income taxes or a conspiracy to defraud the United States. We find no abuse of discretion.

Generally, "when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Turner v. United States,* 396 U.S. 398, 420, 90 S.Ct. 642, 654, 24 L.Ed.2d 610 (1970); *United States v. Outpost Dev. Co.,* 552 F.2d 868, 869– 70 (9th Cir.), *cert. denied,* 434 U.S. 965, 98 S.Ct. 503, 54 L.Ed.2d 450 (1977); *Griffin v. United States,* 502 U.S. 46, 49, 112 S.Ct. 466, 469, 116 L.Ed.2d 371 (1991) (general jury verdict valid so long as legally supportable on one of the submitted grounds—even though no assurance that a valid ground, rather than an invalid one, was actual basis for a jury's action).

We have recognized an exception to the general rule where there has been a conviction of a conspiracy to commit two or more offenses and a conviction on a substantive count charging one of the offenses

> is overturned on appeal for failure to state a crime. If the jury, when considering the conspiracy count, focused only on the crime embodied in the subsequently overturned substantive crime conviction the conspiracy conviction also should be overturned. Of course, if it focused on other crimes as well, the conspiracy conviction should be sustained. The one-is-enough charge makes it impossible to know precisely what the jury considered. Not

knowing, a reviewing court must overturn the conspiracy conviction.

*United States v. Carman,* 577 F.2d 556, 567–68 (9th Cir.1978). This exception would be significant only if we are in error in concluding that Huebner's conviction of aiding and abetting attempted evasion of payment of tax can be sustained.

In *Carman,* the indictment charged, and the jury convicted on a number of substantive counts, ranging from the interstate transportation of money, knowing it to have been taken by fraud, to bribery, and securities fraud. The indictment also charged and the jury convicted of a conspiracy to commit each of the offenses charged in the substantive counts. On appeal, we decided that 18 U.S.C. § 2314 did not reach the conduct contemplated in the count charging the interstate transportation offense. As stated, it was impossible to know whether the jury found only an agreement to engage in conduct which was not an offense, and therefore not an unlawful conspiracy.

■ The case before us is readily distinguishable from *Carman.* There was ample proof that Huebner and Williams conspired with Freeman and others to bring about the filing of the false bankruptcy petitions in order to cause the automatic stay and temporarily stall the process of collection by the IRS. The jury must have found that purpose in order to find defendants guilty on the conspiracy count (as well as to find Huebner guilty on the substantive counts).

Under the facts in this case, it would not have been possible for the jury to have found a conspiracy to aid and abet attempted evasion without also finding a conspiracy to defraud the United States by obstructing collection. The purpose of the defendants' agreement, which the jury must have found, was to make the false filings in order to trigger the automatic stay and thus stall the process of collection of tax. Unlike the situation in *Carman,* there could be no danger that the jurors based their conspiracy verdict on finding that the object was to aid and abet attempted evasion without also finding that the object was to defraud the United States by obstructing collection.

## E. Motion for Disclosure of Exculpatory Evidence

After the commencement of trial, Huebner's counsel filed a motion entitled "Motion for Disclosure of Exculpatory Evidence (Rule 16)." It stated that it was filed under the authority of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and contained 35 numbered requests, some with subdivisions. The second of 19 subdivisions of paragraph 20 requested "All Documents maintained in the system of records known as Individual Master File (IMF) Treasury/IRS 24.030, which pertain to the Defendant[.]"

■ The district court denied his motion without prejudice. The IMF was written in code, with numbers standing for events and procedures. Huebner contends that the district court's denial prevented him from effectively cross-examining a prosecution witness as to the accuracy of the IMF and its contents. He states that his counsel was unable to translate the document and was unaware of its evidentiary significance until trial, and that counsel would not possibly have known that the prosecution would make use of it. Huebner also contends that the court's ruling deprived him of his right to exculpatory evidence under *Brady.*

In response, the government states that, prior to trial, defense counsel had access to documents which translated the IMF into a readable form, as well as access to Certificates of Assessments and Payments, which had been prepared from the IMF and contained translations of its relevant information. Counsel's brief, although asserting generally that he had found inconsistencies in the IMF so great that the IMF document is "literally" fraudulent, and "a fraud, a shame, a red herring," contains no demonstration of unfair prejudice nor that any information would have been exculpatory, so as to invoke *Brady.*

We find no error.

## F. Sufficiency of Evidence

Examination of the record has satisfied us that there was ample evidence to support the jury verdict.

The convictions and sentences are **AFFIRMED**.