**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 12 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff -Appellee,

v.

JOHN E. CODNER,

        Defendant -Appellant.

No. 98-4078

(D.C. No. 96-CR-266-G)

(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **McKAY**, and **MURPHY**, Circuit Judges.

This case was originally scheduled for oral argument on May 14, 1999, but before argument the parties agreed to submit the case on the briefs. This panel has examined the briefs and the appellate record and determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(A)(2). The case is therefore ordered submitted without oral argument.

Defendant-Appellant John E. Codner appeals the judgment of the United

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

States District Court for the District of Utah convicting him of willfully subscribing to false tax returns under penalties of perjury and attempting to evade federal income tax in violation of 26 U.S.C. §§ 7206(1) and 7201, respectively.

Defendant has owned and operated a small printing business in Provo, Utah, since 1979. It appears he and his business filed accurate tax returns and paid all tax obligations through 1987. Between 1988 and 1996, however, Defendant entered into a few relationships with self-proclaimed tax experts who dispensed erroneous tax, accounting, and legal advice. Defendant acted on that advice, against the counsel of his long-time accountant, and on his 1988 and 1989 individual tax returns he claimed false deductions for unreimbursed employee expenses for overtime hours he spent working at his business. The false deductions would have reduced the amount of Defendant's tax liability to zero. Between 1990 and 1996, Defendant simply did not file tax returns. In 1990 and 1991, acting again on the advice of his newfound tax advisors, Defendant transferred all of his assets into eight different trusts to avoid paying taxes and to conceal his income from the Internal Revenue Service. He also opened five bank accounts under the names of trustees who were acquaintances or former business associates and who, in fact, conducted no business on behalf of the trusts.

A grand jury indicted Defendant on November 14, 1996, of two counts of filing a false tax return and two counts of tax evasion. On January 13, 1998, a

jury found Defendant guilty on all counts. The district court then sentenced

Defendant to fifteen months of incarceration and a fine of $4,000.

Defendant appeals his conviction and sentence arguing (1) that the evidence

was insufficient to establish that he violated §§ 7206(1) and 7201, (2) that a

statute of limitations barred prosecution on the two counts of filing a false tax

return, and (3) that the district court erred in its determination of his offense level

under the United States Sentencing Guidelines.[1]  We exercise jurisdiction

pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

I.

In arguing that the evidence was insufficient to support his convictions,

---

[1]Defendant also makes three other cursory allegations of error by the
district court:  (1) the government mischaracterized the testimony of Defendant's
accountant during closing arguments and therefore misled the jury; (2) an *ex parte*
meeting in which the prosecution asserted that Defendant was associating with
known tax protestors prejudiced him before the judge; and (3) the district court
erred in not allowing Defendant to present evidence of the circumstances of his
arrest.  See Appellant's Br. at 3-5, 16; Appellee's Br. at 22.  However, because
Defendant's brief fails to support these three issues with pertinent authority,
record citations, or reasoned arguments, we will treat them as waived.  See United
States v. Callwood, 66 F.3d 1110, 1115 n.6 (10th Cir. 1995) ("A litigant who
mentions a point in passing but fails to press it 'by supporting it with pertinent
authority . . . forfeits the point.'" (quoting Pelfresne v. Village of Williams Bay,
917 F.2d 1017, 1023 (7th Cir. 1990)); United States v. Evans, 970 F.2d 663, 671
n.11 (10th Cir. 1992); see also United States v. Zannino, 895 F.2d 1, 17 (1st Cir.
1990) ("It is not enough merely to mention a possible argument in the most
skeletal way, leaving the court to do counsel's work, create the ossature for the
argument, and put flesh on its bones.").

Defendant contends that the evidence did not establish (1) that he acted willfully, a necessary element for all counts of filing a false tax return and tax evasion, and (2) that he owed a substantial tax liability for 1989, a component of the second count of filing a false tax return. To review an argument alleging insufficient evidence, we "'must review the record de novo and ask only whether taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt.'" United States v. Hanzlicek, 187 F.3d 1228, 1239 (10th Cir. 1999) (quoting United States v. Voss, 82 F.3d 1521, 1524-25 (10th Cir. 1996)). We consider each of Defendant's two arguments in turn.

A.

The standard for willfulness in the context of criminal tax statutes "requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." Cheek v. United States, 498 U.S. 192, 201 (1991). Defendant asserts that he acted with a good faith belief that he was complying with tax laws. His only error, he claims, was to trust a number of unscrupulous individuals who dispensed erroneous tax, legal, and accounting advice. Defendant apparently wishes that we

-4-

would not take into consideration the ample evidence and testimony presented at trial demonstrating the accurate advice he received but disregarded.

In 1988 and 1989, Defendant's long-time accountant counseled Defendant that the unreimbursed employee expense deduction he claimed on his returns was not justified. To punctuate his advice after Defendant insisted upon claiming the deduction, the accountant refused to sign those returns. A jury could reasonably infer from the accountant's testimony that Defendant understood his duties to comply with the tax laws and knew that the deductions he claimed for unreimbursed employee expenses were improper. With regard to the tax evasion charges under § 7201, a former business partner testified at trial that Defendant acknowledged to him that his purpose in transferring assets into trusts was to conceal his income from the IRS. One of Defendant's employees testified that he heard Defendant explaining to others at his business that he was setting up the trusts to avoid paying taxes. That same employee also heard Defendant's stock broker and accountant warn Defendant against setting up the trusts and getting involved in questionable tax practices. On the basis of this testimony, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Defendant knowingly and intentionally violated his legal duty to comply with the laws that prohibit tax evasion and the filing of false tax returns. Cf. United States v. Huebner, 48 F.3d 376, 380 (9th Cir. 1994) (holding that the concealment

-5-

of assets to avoid tax collection, as opposed to a simple delay of payment that would be "consistent with an intent ultimately to make payment," supports a finding of willfulness in tax evasion under § 7201).

## B.

In the second part of Defendant's insufficiency of the evidence argument, he argues that the evidence was not sufficient to establish a tax liability for 1989. He claims that a tax deficiency is a necessary component of the offense of willfully subscribing to a false tax return in violation of 26 U.S.C. § 7206(1).[2]  Under the law of this circuit, however,

> [t]o sustain a conviction under Section 7206(1), the government must prove (1) that the Appellant made and subscribed to a tax return containing a written declaration, (2) that it was made under the penalties of perjury, (3) that he did not believe the return to be true and correct as to every material matter and (4) that he acted willfully.

United States v. Owen, 15 F.3d 1528, 1532 (10th Cir. 1994) (citing United States v. Kaiser, 893 F.2d 1300, 1305 (11th Cir. 1990)).  Nothing in this standard requires proof of a tax deficiency.  Accord United States v. Marashi, 913 F.2d 724,

---

[2]Defendant also claims that a tax deficiency is a necessary component of charges of tax evasion under § 7201.  See Appellant's Br. at 18.  He is correct on that point.  However, the count for the year 1989 was willfully subscribing to a false tax return in violation of § 7206(1).  Defendant was charged with only two counts of tax evasion, more specifically for the years 1990 and 1991, for which the government established the existence of a tax deficiency.

736 (9th Cir. 1990) ("Section 7206(1) is a perjury statute; it is irrelevant whether there was an actual tax deficiency."). We therefore hold that the existence of a tax deficiency is not an element of § 7206(1).

Having reviewed the record on appeal, we also conclude that the evidence was sufficient to establish a violation of § 7206(1), even if the prosecution did not establish that Defendant owed any tax for 1989. In sum, the evidence presented to the jury on the two counts of filing fraudulent tax returns and the two counts of tax evasion was sufficient to support a verdict of guilty beyond a reasonable doubt.

II.

Defendant asserts that his prosecution on the two counts of filing a false tax return should have been barred by a statute of limitations. We review this question of law de novo. See Industrial Constructors Corp. v. United States Bureau of Reclamation, 15 F.3d 963, 967 (10th Cir. 1994).

The limitations period for violations of 26 U.S.C. § 7206(1) is six years. See 26 U.S.C. § 6531(5). The period on count one of Defendant's indictment began to run on October 15, 1989, when he subscribed to his 1988 return under penalties of perjury, and the limitations period for count two began on April 16, 1990, when he signed and filed his 1989 return. Under ordinary circumstances, then, the limitations periods would have expired on October 15, 1995, for the first

count and April 16, 1996, for the second.  The statute of limitations seemingly

would bar the prosecution of the two counts of willfully subscribing to a false tax

return for which Defendant was indicted on November 14, 1996.

The Internal Revenue Code, however, provides for the tolling of the statute

of limitations period if an individual seeks to quash a summons issued to a third

party for financial information relevant to the individual's tax liability.  See 26

U.S.C. § 7609(e).  The Code provides that

> [i]f any person . . . [moves to quash a summons to a third party] and
> such person is the person with respect to whose tax liability the
> summons is issued . . . , then the running of any period of
> limitations . . . under section 6531 (relating to criminal prosecutions)
> with respect to such person shall be suspended for the period during
> which a proceeding, and appeals therein, with respect to the
> enforcement of such summons is pending.

Id. § 7609(e)(1).  Federal regulations mandate that the limitations period is tolled

for the entire time during which the summons is litigated, including the pendency

of an appeal and the time in which a petition for rehearing may be made.  See 26

C.F.R. § 301.7609-5(b).

In response to the government's investigation of him, Defendant filed a

petition on February 17, 1993, to quash summonses to third parties relating to his

tax liability in 1988 and 1989.  After the district court denied his petition and

granted the government's petition to enforce the summonses, this court affirmed

the district court's order on February 28, 1994.  See Codner v. United States, 17

F.3d 1331 (10th Cir. 1994). Defendant then had a period of forty-five days to petition this court for rehearing, pursuant to Federal Rules of Appellate Procedure Rule 40(a). This period expired on April 14, 1994. Under 26 C.F.R. § 301.7609-5(b), the statute of limitations for Defendant's false tax return violations was tolled for 421 days, from February 17, 1993, to April 14, 1994. After taking the tolling period into account, we conclude that the limitations period on the first count of filing a false tax return did not expire until December 9, 1996, and the limitations period on the second count did not expire until June 10, 1997. Since Defendant was indicted on November 14, 1996, we hold that the indictment and prosecution were not barred by the statute of limitations.

## III.

We turn to Defendant's arguments that the district court erred in determining his offense level under the Sentencing Guidelines. We review a district court's legal interpretation of the Sentencing Guidelines de novo. See United States v. Henry, 164 F.3d 1304, 1310 (10th Cir.), cert. denied, __ U.S. __, 119 S. Ct. 2381 (1999). We review factual findings supporting a base offense level calculation for clear error. See United States v. McClelland, 141 F.3d 967, 973 (10th Cir. 1998).

Defendant argues that the district court should not have been permitted to

use the tax loss from the years 1992 through 1996 in addition to the tax loss from 1988 through 1991 for the purpose of calculating the total tax loss attributable to Defendant's base offense level. He further asserts that the district court's use of the 1992-1996 tax loss violated his Fifth Amendment right against self-incrimination and was contrary to the intent of Congress because the district court obtained the amount of tax loss for those years from the income tax returns submitted by Defendant to the probation officer during the presentence investigation.

A.

We consider first whether the district court erred in including the tax loss from 1992 through 1996 in its determination of the total tax loss attributable to Defendant.[3] The base offense levels for violations of 26 U.S.C. §§ 7201 and 7206(1) are based on the tax loss attributable to the defendant's conduct. Section 2T1.1 of the Sentencing Guidelines defines "tax loss" as "the greater of: (A) the total amount of tax that the taxpayer evaded or attempted to evade; and (B) the 'tax loss' defined in § 2T1.3." U.S.S.G. § 2T1.1. For a noncorporate taxpayer, § 2T1.3 defines "tax loss" as "28 percent of the amount by which the greater of

_____

[3]Defendant was sentenced under the November 1, 1991 edition of the United States Sentencing Guidelines. All references to the Guidelines in this opinion are to that edition.

-10-

gross income and taxable income was understated, plus 100 percent of the total amount of any false credits claimed against the tax." Id. § 2T1.3.  In determining the tax loss for an offense, the sentencing court may consider not only the offense of conviction but also all relevant conduct that is part of the same course of conduct or common scheme or plan.  See id. § 2T1.1 comment. (n.3); § 1B1.3(a)(2).  "[A]ll conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated."  Id. § 2T1.1 comment. (n.3); § 2T1.3 comment. (n.3).  We have held that "even uncharged tax losses constitute relevant conduct which a sentencing court may consider in determining the basic offense level tax loss."  United States v. Higgins, 2 F.3d 1094, 1097-98 (10th Cir. 1993) (citing United States v. Meek, 998 F.2d 776, 781 (10th Cir. 1993)).

The district court included in its tax loss calculations the amount attributable to Defendant for not filing income tax returns for the years 1992 through 1996.  At sentencing, the government proved indirectly that this conduct was part of the same course of conduct by establishing simply that by not filing income tax returns from 1992 through 1996 Defendant violated the tax code.  See Meek, 998 F.2d at 782 (noting that "the government may prove that the defendant's non-charged conduct was part of the same course of conduct as the offense of conviction . . . indirectly, by establishing simply that all the conduct to

-11-

be aggregated constituted violations of the tax code"). Despite the fact that the presentence investigative report provided ample notice of the conduct that would be considered at sentencing, Defendant failed to rebut the presumption accorded the government's proof "by coming forward with evidence that his non-charged conduct was clearly unrelated to his conviction." Id. In fact, up through the time of trial Defendant failed to file income tax returns at the times required by law and persisted in concealing his assets in trusts. We hold that the district court did not clearly err in determining that the tax loss from the years 1992 through 1996 was part of the same course or pattern of falsifying tax returns and evading taxes that Defendant began in 1989. Accordingly, the district court did not err in its calculation of tax loss and relevant conduct under the sentencing guidelines.

B.

Turning now to the constitutional claim, we note that the district court was able to arrive at the amounts of tax loss attributable for the years 1992 through 1996 because Defendant submitted tax returns for those years during the presentence investigation. Defendant complains that the district court's use of these returns submitted during the presentence investigation as part of his "good faith attempt to reconcile with the system by paying up years of taxes" violates his Fifth Amendment rights against self-incrimination and congressional intent to

-12-

encourage compliance with tax laws. Appellant's Br. at 29. These arguments are unavailing.

The Fifth Amendment protects against the use of compelled testimony; it does not prohibit the use of evidence that a defendant voluntarily turns over to the government. "Voluntary statements of any kind are not barred by the Fifth Amendment . . . ." Miranda v. Arizona, 384 U.S. 436, 478 (1966). Therefore, "the government may use voluntarily filed tax returns against a defendant without violating the Fifth Amendment." United States v. Hammes, 3 F.3d 1081, 1083 (7th Cir. 1993) (citing Garner v. United States, 424 U.S. 648, 665 (1976)); see also United States v. Brown, 600 F.2d 248, 252 (10th Cir. 1979) (indicating that Fifth Amendment does not protect defendant against the disclosure of income in tax returns). Because Defendant voluntarily submitted the returns for 1992 through 1996 which disclosed his income, the district court did not err in using the amounts reported in those returns at sentencing.

Defendant also argues that the district court's use of the returns he filed during the presentence investigation is inconsistent with congressional intent to promote compliance with the tax laws. His argument ignores the fact that the Internal Revenue Code was designed "to induce *prompt* and forthright fulfillment of *every* duty under the income tax law." Spies v. United States, 317 U.S. 492, 497 (1943) (emphasis added). The government furthers the objective of inducing

prompt compliance with tax laws when it places taxpayers on notice that, as here, a sentence for charged offenses will be longer when a defendant has committed additional violations of the law. Defendant filed his tax returns for the years 1992 through 1996 in an attempt to set things straight only after he had been prosecuted and found guilty of willfully subscribing to false tax returns and tax evasion. The district court's use of his 1992-1996 tax returns to calculate his sentence was not inconsistent with congressional intent to promote prompt and exacting compliance with federal tax law.

IV.

Finally, on September 27, 1999, and January 4, 2000, Defendant filed three motions with our court pursuant to Rule 27 of the Federal Rules of Appellate Procedure and the Tenth Circuit Rules making several requests. In his first motion filed September 27, 1999, Defendant requested an extension of time to supplement the record. In his second motion filed September 27, 1999, Defendant provided a lengthy recount of the circumstances surrounding his arrest and investigation and requested leave to file a brief in lieu of oral argument. In the third motion filed January 4, 2000, Defendant repeated his version of the factual scenario surrounding his arrest and investigation claiming that he continues to suffer harassment at the hands of IRS officials, reiterated his request to supplement the

record with further affidavit and memorandum, and appeared to request an order for injunctive relief requiring the IRS to refrain from assessing taxes for the periods of time which are the subject of this appeal.

We are not persuaded that anything in the content of Defendant's motions would change the outcome of our decision in this case. The district court ruled at trial that evidence of the events surrounding Defendant's arrest and investigation by the IRS was inadmissable. We see no reason to question the district court's ruling on the matter. For this reason and because we are satisfied that Defendant has failed in every other attempt to present a cogent legal argument of error in the judgment and sentence imposed by the district court, we deny his motions and affirm Defendant's convictions and sentence.

DENIED and AFFIRMED.

Entered for the Court

Monroe G. McKay
Circuit Judge