UNITED STATES of America,
Plaintiff–Appellee,

v.

Mark Anthony ROBERTS,
Defendant–Appellant.

No. 03–50152.

D.C. No. CR–01–04–RT.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted * Feb. 8, 2005.

Decided March 25, 2005.

* The sentencing claim was separately submitted by order filed March 23, 2005.

Andrew Cowan, Esq., Office of the U.S. Attorney, Los Angeles, CA, for Plaintiff–Appellee.

Jerry A. Behnke, Esq., Office of the U.S. Attorney, Riverside, CA, Verna J. Wefald, Esq., Bensinger Grayson & Ritt, Pasadena, CA, for Defendant–Appellant.

** The Honorable Richard D. Cudahy, Senior Circuit Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation.

Before GOODWIN, CUDAHY ** and RYMER, Circuit Judges.

### MEMORANDUM ***

Dr. Mark Anthony Roberts appeals his conviction on several counts of wire fraud, in violation of 18 U.S.C. § 1343, and making false statements, in violation of 18 U.S.C. § 1001, as well as his sentence. We affirm his conviction, but we vacate his sentence and the district court's restitution order and remand for resentencing and for reconsideration of the restitution calculation.

### I

With respect to Roberts' first claim, we are satisfied that there was enough evidence to support the jury verdict below. Under the authorities of this circuit, we must consider merely "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see also United States v. Booth,* 309 F.3d 566, 574 n. 5 (9th Cir.2002). That is, we must determine "whether the jury could reasonably arrive at its verdict." *United States v. Mares,* 940 F.2d 455, 458 (9th Cir.1991).

■ Ordinarily we make such a determination *de novo.* *United States v. Cordova Barajas,* 360 F.3d 1037, 1040 (9th

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

Cir.2004). However, where, as here, "a defendant fails to renew his motion for judgment of acquittal at the close of all evidence, we will review a claim of insufficiency of the evidence only for plain error," *United States v. Carpenter,* 95 F.3d 773, 775 (9th Cir.1996), or to "prevent a manifest miscarriage of justice," *United States v. Alvarez–Valenzuela,* 231 F.3d 1198, 1200–01 (9th Cir.2000). Given the overwhelming evidence concerning the contents of the health certificates (including Roberts' admission that he signed them himself), the true origin of the shipments in question, the timing of their arrival in California and the inability of state authorities in Tennessee or California to locate copies of the certificates, a rational jury certainly could have found all the elements of the offenses for which Roberts was convicted, including the mens rea elements. That is, a jury could have rationally credited the government's account of events rather than Roberts'.

Roberts' claims regarding juror questioning are similarly unavailing. We have consistently upheld the kind of neutral, tightly-controlled questioning procedures employed at his trial. *See United States v. Huebner,* 48 F.3d 376, 382 (9th Cir.1994) (upholding lower court's practice of allowing jurors to request evidence on particular points by submitting written requests to the bench). Moreover, Roberts can demonstrate no prejudice resulting from the two juror questions submitted at trial, one of which was answered by the stipulation of both parties and one of which the judge declined to answer at all.

■ As to Roberts' claim concerning jury consideration of extrinsic evidence, we agree with the district court that the juror statement in question—alleging an absence of weigh stations on the highways leaving Illinois—was a reference to personal life experience rather than extrinsic evidence. Such references are permissible under the case law of this circuit. *See United States v. Navarro–Garcia,* 926 F.2d 818, 821–22 (9th Cir.1991). Yet even were we to consider the statement extrinsic evidence (which we do not), Roberts' claim on this score still fails since, given the overwhelming evidence that the pigs in question *did in fact* come from Illinois (or Texas), the statement could not have made any difference to the outcome of the case. *See United States v. Keating,* 147 F.3d 895, 899 (9th Cir.1998) (Reviewing courts must determine whether extrinsic evidence "contribute[d] to the verdict.") (internal quotations omitted).

■ The district court also did not abuse its discretion in denying Roberts' motion for a new trial based on newly-discovered evidence. *See United States v. Holmes,* 229 F.3d 782, 789 (9th Cir.2000) (holding denial of a motion for a new trial based on newly-discovered evidence is reviewed for abuse of discretion). To prevail on such a motion, a defendant must demonstrate, at a minimum, that due diligence could not have uncovered the evidence earlier and that a new trial would likely result in acquittal. *United States v. Kulczyk,* 931 F.2d 542, 548 (9th Cir.1991). Yet here Roberts offers no persuasive explanation as to why he could not have located the newly-discovered copy of a missing health certificate earlier—for aught that appears, the document was in his family's storage at all times relevant to this suit. Additionally, the newly-discovered copy would not have affected the jury's verdict since it does not account for missing copies of the other certificates in question, the missing certificate booklet or the absence of any filings with the Tennessee, Illinois, Texas or California health authorities.

In light of the foregoing, we affirm Roberts' conviction.

## II

The district court's restitution order, by contrast, seems a bit more problematic. Federal law provides that "in the case of an offense resulting in damage to or loss or destruction of property," crime victims must be paid restitution in "an amount equal to(i) the greater of(I) the value of the property on the date of the damage, loss, or destruction; or (II) the value of the property on the date of sentencing, less (ii) the value (as of the date the property is returned) of any part of the property that is returned." 18 U.S.C. § 3663A(b)(1)(B). This court has interpreted these provisions to allow restitution "only for losses *directly resulting* from the defendant's offense." *United States v. Morgan*, 376 F.3d 1002, 1014–15 (9th Cir. 2004) (internal quotations omitted) (emphasis added); *see also United States v. Koenig*, 952 F.2d 267, 275 (9th Cir.1991); *United States v. Kenney*, 789 F.2d 783, 784 (9th Cir.1986). "[T]he phrase 'directly resulting' means that the conduct underlying the offense of conviction must have caused a loss for which a court may order restitution, but the loss cannot be too far removed from that conduct." *United States v. Gamma Tech Indus., Inc.*, 265 F.3d 917, 928 (9th Cir.2001); *see also Morgan*, 376 F.3d at 1014. *Accord United States v. Cummings* 281 F.3d 1046, 1052 (9th Cir. 2002) ("To survive scrutiny, there must be a close connection between the restitution ordered and the injury sustained from the criminal behavior.").

Under this rubric the Ninth Circuit has "approved restitution awards that included losses at least one step removed from the offense conduct itself," *Gamma Tech*, 265 F.3d at 928, including attorney's fees, *Cummings*, 281 F.3d at 1052, overpayments and lost profits resulting from defendant's misconduct, *Gamma Tech* 265 F.3d at 928, expenses associated with notifying customers of theft and reprogramming accounts, *Koenig*, 952 F.2d at 274–75, and compensation for lost inventory resulting from a fraud scheme, *United States v. Rice*, 38 F.3d 1536, 1542 (9th Cir.1994).

■ In the instant case, however, the district court, while acknowledging that losses must stem directly from the conduct underlying the offense, appears to have included in its restitution order both the value of De Jong's lost herd (after offsets for proceeds from sales mitigating damages) *plus* the costs of repopulating De Jong's facility with new pigs. In short, the district court may have compensated De Jong twice for the pigs lost due to the quarantine. We have not been alerted to any authority which permits such a disposition. Thus, we vacate the district court's restitution order and remand the case for recalculation of the restitution amount. On remand, the district court should consider carefully each component of De Jong's statement of loss and (1) evaluate whether each is authorized by statute and the relevant case law and (2) verify that the various components of the restitution order are not duplicative.

While conducting a reexamination of the restitution award, the district court should also explain in detail the reasons for the extraordinary discrepancy between the amount prescribed for Roberts and the amount prescribed for his co-conspirator Eddie Smotherman.

## III

Roberts' sentence was enhanced under the old mandatory Federal Sentencing Guidelines. We therefore vacate Roberts' sentence and remand for resentencing consistent with the Supreme Court's decision in *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

## IV

Defendant-appellant's conviction is hereby AFFIRMED, the district court's restitution order and sentence are hereby VACATED, and the case is REMANDED for resentencing and reconsideration of the restitution order.